UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  12-CV-23272-GRAHAM/Goodman

SONIA DELGADO, JUAN ENRIQUE
DELGADO and JACQUELINE CABRERA,
as Co-Personal Representatives of the Estate
of Juan Delgado, Deceased,

                    Plaintiffs,

vs.

DELTA AIR LINES, INC.,

                    Defendant.
_____/

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

        Plaintiffs, Sonia Delgado, Juan Enrique Delgado, and Jacqueline Cabrera, as Co-Personal

Representatives of the Estate of Juan Delgado, seek partial summary judgment[1] because there is

no issue of material fact to preclude a finding that the decedent Juan Delgado died as a result of

an "accident" when he fell down a defective portable staircase during the disembarkation of a

747-400 (one of the world's largest commercial passenger aircrafts) at Charles De Gaulle

Airport.

## I.        INTRODUCTION

        This case is governed by Article 17 of the Convention for the Unification of Certain

Rules for International Carriage by Air (the "Montreal Convention").  The threshold question

under Article 17 is whether the subject incident was an "accident." The evidence leads to the

inescapable conclusion that an "accident" occurred during Mr. Delgado's disembarkation—

wherein he sustained fatal injuries as he fell down a defective portable staircase.

_____

[1] Plaintiffs seek partial summary judgment pursuant to Federal Rule of Civil Procedure 56 and
Southern District of Florida Local Rule 56.1.

## II.        FACTUAL BACKGROUND

The Delgado family bought airline tickets from Delta Airlines to travel on Flight 695 from Miami, Florida, to Paris, France, for a family vacation.  Pls. Statement of Undisputed Facts at ¶ 28.  Flight 695 was operated by Delta's code-share partner, Air France.  *Id.*  The family took the flight from Miami to Paris on May 30, 2013, landing on the morning of May 31, 2013.  *Id.* at ¶ 5.

Flight 695 was late in arriving into Charles de Gaulle airport.  *Id.* at ¶ 6.  In addition to being late, the aircraft was parked at a remote parking space for disembarkation, rather than at the terminal.  *Id.* at ¶ 9.  After disembarking, the passengers were to wait for buses to take them from the remote spot to the terminal to clear customs and, if taking one, attempt to make it to their connecting flights.  *Id.*  The combination of two factors—the late arrival and the remote deplaning—led certain of the passengers to disembark in a rushed or frenzied manner.  *Id.* at ¶¶ 20, 22 & 23.

All of the passengers aboard the large 747 aircraft were forced to deplane via a single portable staircase,[2] rather than a jet-way.  *Id.* at ¶ 9.  Mrs. Delgado, who had been married to her husband for 53 years and who was intimately aware of his travel experiences, states that neither she nor her husband ever before disembarked a wide-bodied aircraft using stairs, and never before used stairs to disembark any aircraft at the Charles de Gaulle airport.  *Id.* at ¶¶ 1–4.  Mrs. Delgado testified that there was no prior warning about the use of stairs, and they became aware of the method of disembarkation only upon exiting the aircraft.  *Id.* at ¶ 21.  She characterized her husband as a careful man, who held onto the hand rail as he descended.  *Id.* at ¶ 15.

---

[2] A second staircase was brought to assist in the disembarkation process only after Mr. Delgado's accident occurred.

It is undisputed that the staircase was missing a significant portion of the anti-skid tape that should have been on the leading edge of the eleventh step from the bottom of the stairs. *Id.* at ¶¶ 17–19. The portion that was missing was on the left side of that step—the same side on which Mr. Delgado descended the stairs to disembark the aircraft. *Id.* A member of the ground crew, Ms. Constantine, reported to the Gendarmarie (the French police) that Mr. Delgado's fall initiated around the eleventh step from the bottom. *Id.* at ¶ 20. Mrs. Delgado confirms the same information. *Id.* Plaintiffs' experts opine that Mr. Delgado fell because of the defective condition of the eleventh step from the bottom of the stairs, and because passengers were jostling during the disembarkation. *Id.* at ¶ 25. Delta's proffered human factors expert admits that he cannot rule out an external cause to Mr. Delgado's fall. *Id.* at ¶ 26.

### III.    STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, and affidavits demonstrate there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A partial summary judgment accelerates litigation by framing and narrowing the triable issues, and by eliminating, before trial, matters that contain no genuine issue of material fact." *Antenor v. D & S Farms*, 866 F. Supp. 1389, 1396 (S.D. Fla. 1994), *rev.'d on other grounds*, 88 F.3d 925 (11th Cir. 1996). Although the evidence should be viewed in the light most favorable to the non-moving party, "when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible,'" those inferences cannot preclude summary judgment. *Mize v. Jefferson City Bd. Of Educ.,* 93 F.3d 739, 742–43 (11th Cir. 1996).

IV.    **DELTA IS RESPONSIBLE FOR ANY NEGLIGENCE OF AIR FRANCE THAT LED TO MR. DELGADO'S DEATH.**

Under the Montreal Convention, Delta, as the contracting carrier, is responsible for any negligence of the operating carrier, Air France.  Article 40 of the Montreal Convention states that a passenger may bring suit against the carrier from which the carriage was purchased, or against the code-sharing carrier.  Art. 40, Montreal Convention; *see also McCarthy v. Am. Airlines, Inc.*, No. 07-61016-CIV, 2008 WL 2704515, *3 (S.D. Fla. June 27, 2008).  It is undisputed that Mr. Delgado purchased his ticket for travel on Flight 695 from Delta Airlines.  As such, it is a properly named defendant, and is responsible for the Plaintiffs' damages that were caused by the negligence of Air France, the code-sharing carrier.

V.    **MR. DELGADO'S DEATH RESULTED FROM AN "ACCIDENT."**

Article 17 of the Montreal Convention imparts liability on air carriers for "accident[s] which caused the death or injury [of a passenger] in the course of any of the operations of embarking or disembarking." *See* Art. 17(1), Montreal Convention (emphasis added). The threshold issue here is whether an "accident" led to Mr. Delgado's death.  *See Ugaz v. Am. Airlines*, 576 F. Supp. 2d 1354, 1360 (S.D. Fla. 2008) (citing *Marotte v. Am. Airlines, Inc.*, 296 F.3d 1255, 1259 (11th Cir. 2002)) (articulating three Article 17 requirements: "(1) an accident must have occurred; (2) injury or death must have occurred; and, (3) the preceding two conditions must have occurred while 'embarking or disembarking' or during the flight itself."). It is undisputed that Mr. Delgado died from his injuries.  It is also undisputed that Mr. Delgado's injuries occurred while disembarking Flight 695.  Thus, the only question remaining is whether Mr. Delgado's injuries were caused by an "accident."

In the Montreal Convention context, the Supreme Court has defined "accident" to mean that the "passenger's injury is caused by an unexpected or unusual event or happening that is

4

external to the passenger." [3]  *Air France v. Saks*, 470 U.S. 392, 405–06 (1985).  "This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries."  *Id*.  The Supreme Court further explained that the accident only need be "some link in the chain," rather than the sole cause of Plaintiff's injuries.  *Id*.

Applying *Saks*, courts have found that falling down stairs constitute an "accident" in circumstances like that of Mr. Delgado's.  For example, in *McCarthy v. Am. Airlines, Inc.*, No. 07-61016-CIV, 2008 WL 2704515, *4–5 (S.D. Fla. June 27, 2008), a passenger was hurt when he fell (or jumped) off stairs after he was directed by a flight attendant to return his luggage to check it plane-side and was in the process, touched by the flight attendant, causing him to lose his balance.  The Court explained that these external factors leading to the passenger's fall would constitute an accident.  *Id*.  Likewise, in *Gezzi v. British Airways PLC*, 991 F.2d 603, 605 (9th Cir. 1993) [4], the Court found that the presence of water on a portable staircase was an unexpected factor, and that the resulting fall was an accident as a matter of law.

Mr. Delgado's fall resulted from "unusual or unexpected events or happening" that were external to him.  Those factors were: 1.) the use of stairs to disembark a wide-body aircraft; 2.) the jostling passengers which likely bumped him during disembarkation; and, 3.) the defective step from which he fell.

---

[3] Because the Montreal Convention recently entered into force, courts rely on cases interpreting the Warsaw Convention, the predecessor to the Montreal Convention, where equivalent provisions are substantively the same.  *Ugaz*, 576 F. Supp. 2d at 1360.

[4] Cited approvingly by the Eleventh Circuit in *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1522 n.11 (11th Cir. 1997).

a.  **The Use of Stairs to Disembark Flight 695 was Unexpected and External to Mr. Delgado, and His Death Resulted from an Accident.**

That stairs were used to deplane the subject flight, rather than the traditional jetway, is an unexpected, external event that caused Mr. Delgado's "accident." *See Cuartas v. Am. Airlines, Inc.,* No. 1:10-cv-00390, 2012 WL 845543, at *1 (S.D. Ind. March 12, 2012) (denying the defendant's Motion for Summary Judgment where the plaintiff argued it was unexpected that portable stairs, rather than a jetway, were used to disembark the flight).  Although an unreported decision out of the Southern District of Indiana, *Cuartas* shows that airlines have previously tried and failed to argue that the use of stairs, instead of a jetway, could not be an external factor causing an "accident" under the Montreal Convention.  *Id.* at *4.  In support of her contention that an "accident" occurred, the plaintiff pointed to a number of pieces of evidence.  *Id.* Specifically, "the evidence suggest[ed] that a jetway, not stairs, was the standard method of disembarkation," and the particular "stairs were steep and lacked traction strips."  *Id.*  Citing the Ninth Circuit and the Southern District of Florida, the *Cuartas* court agreed that the "injuries suffered by falling down stairs . . . result from 'accidents' under Article 17."  *Id.* (citing *Gezzi*, 991 F.2d 603 and *McCarthy*, 2008 WL 2704515).  Ultimately, the Court determined that there was an issue for the jury to decide because the defendant had presented some evidence indicating that there was in fact a warning issued relating to the use of stairs, and therefore it may not have been unexpected.  *Id.*

Here, however, there is no issue of material fact that precludes entry of partial summary judgment on the issue of whether an accident occurred.  Like in *Cuartas*, Mr. Delgado was forced to disembark a large airplane via portable stairs.  Mr. Delgado had never disembarked a large aircraft, like the one used for Flight 695, using portable stairs, and had never done so at the Charles de Gaulle airport.  Further, there were no warnings to the passengers that the flight was

6

going to disembark using portable stairs.  In fact, Mrs. Delgado testified that she did not realize that they would disembark using a staircase until she had already exited the aircraft.  There is no potential for dispute that if this aircraft would have disembarked using a jetway, instead of portable passenger stairs, then Mr. Delgado would not have sustained the fatal injuries he did. On this issue, partial summary judgment should be granted in favor of the Plaintiffs.

### b.  Rushed and Jostling Passengers on the Defective Portable Stairs were Unexpected, External Factors to Mr. Delgado, and his Death Resulted from an Accident.

Even if this Court does not find the use of portable stairs without warning in and of itself sufficiently unusual or unexpected to amount to an "accident," partial summary judgment is still appropriate in this case.  Courts in this district have found an "accident" occurred where there was a direct outside influence on the passenger disembarking via stairs.  An "accident" would have been found to have occurred if jostling passengers or a crew member touching the injured party caused him or her to fall.  *See Ugaz*, 576 F. Supp. 2d at 1365; *McCarthy*, 2008 WL 2704515 at *4–6 (holding that where the plaintiff was directed to return his luggage to check plane-side and the flight attendant touched the plaintiff on his back causing him to fall, an "accident" occurred).  The Southern District of Florida opinion in *Ugaz* provides the most instructive language about when an outside influence constitutes an unusual or unexpected event on stairs.  576 F. Supp. 2d at 1365.

In *Ugaz*, Chief Judge Moreno granted Defendant, American Airlines's motion for summary judgment where the plaintiff completely failed in her responsive pleadings to counter the defendant's contention that no "accident" occurred.  *Id*.  The plaintiff in *Ugaz* sued the airline after she was injured trying to ascend an inoperable escalator inside an airport while carrying her luggage.  *Id*. at 1359.  In concluding that no accident could have occurred, the Court emphasized that Ugaz fell because of her own internal decision to use the inoperable stairs even though

alternatives were available to her.  *Id*.  Because only a few cases throughout the country had considered whether the use of stairs constituted an accident under Article 17, Chief Judge Moreno synthesized the law and concluded: for there to be an actionable "accident" there must be "foreign substances on the stairs, *jostling passengers*, or other direct outside influence that caused the Plaintiff's fall apart from her own decision to climb" a stair case.  *Ugaz*, 576 F. Supp. 2d at 1365 (emphasis added); *see also Goodwin v. British Airways PLC*, No. 09-10463-MBB, 2011 WL 3475420, at *4–5 (D. Mass. August 8, 2011) (noting that Courts find contact with another passenger which results in injury "quintessentially external").[5]

Here, Mr. Delgado and hundreds of other passengers had no choice but to disembark using a single neglected staircase. Mr. Delgado's family described that the passengers were rushing down the stairs, jostling one-another in the process to get off the aircraft, and that it is virtually impossible that Mr. Delgado did not get bumped.  Mr. Delgado fell when he reached a defective step on the staircase—one that was missing the black anti-skid strip from its leading edge.  Plaintiffs' experts opine that the jostling passengers and the defective step caused Mr. Delgado's fall.  Mr. Delgado had descended down over half of the staircase without incident before his fall.  These factors, inarguably unexpected by and external to Mr. Delgado, caused his fall, and his fall is defined as an "accident" under the Montreal Convention.  Partial summary

---

[5] Note that *Goodwin v. British Airways PLC*, employs a second step in the accident inquiry that is not recognized in the Eleventh Circuit wherein it analyzes whether the accident occurred in the normal course of the operation of the aircraft.  2011 WL 3475420, at *6.  The Court notes that the two-prong accident analysis which is well-settled in the District in Massachusetts is not in line with the law of other circuits.  In fact, the Plaintiff in *Goodwin* argued that the court there should follow the law of the Ninth Circuit (which is the same as the Eleventh Circuit), and the court declined to do so.  *Id.*; compare *Ugaz*, 576 F. Supp. 2d at 1361 and *Kwon v. Singapore Airlines*, 356 F. Supp. 2d 1041 (N.D. Cal. 2003) (both noting only that the "accident" had to occur during the process of embarking or disembarking and not employing the two-pronged accident analysis).

judgment on the issue of whether an accident caused Mr. Delgado's death should be granted in Plaintiffs' favor.

## VI.   CONCLUSION

Wherefore, based on the foregoing facts and arguments, Plaintiffs respectfully request this Court grant their Motion for Partial Summary Judgment regarding the occurrence of an "accident" under the Montreal Convention.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been served via CM/ECF to all attorneys of record on this 15th day of July, 2013.

Respectfully submitted,

s/ Steven C. Marks
Steven C. Marks (FBN 516414)
Email: smarks@podhurst.com
Lea P. Valdivia (FBN 84763)
Email: lvaldivia@podhurst.com
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: (305) 358-2800
Fax: (305) 358-2382
*Attorneys for Plaintiffs*