UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-CV-23272-Graham/Goodman

SONIA DELGADO, JUAN ENRIQUE
DELGADO & JACQUELINE CABRERA, as
co-Personal Representatives of the Estate of
Juan Delgado, Deceased

      Plaintiffs,

v.

DELTA AIR LINES, INC.

      Defendant.
_____/

### DELTA'S MOTION TO EXCLUDE OPINION TESTIMONY
### OF MANUEL RAEFSKY AND MEMORANDUM OF LAW

Defendant Delta Air Lines, Inc. ("Delta") moves for the entry of an order excluding from evidence the opinion testimony of Plaintiffs' purported expert, Manuel Raefsky.

**I.     INTRODUCTION**

This action arises from the death of Juan Delgado ("Delgado" or "decedent"), an 80 year-old man who fell on an ABS-580 mobile staircase while disembarking from an Air France 747 aircraft in Paris on May 31, 2012 after a nine-hour flight from Miami. Plaintiffs filed suit against Delta for wrongful death under Article 17 of the Montreal Convention, the applicable law in this action.[1]

For the sake of brevity, Delta adopts and incorporates by reference the general factual portion of the Introduction section of its Motion to Exclude Opinion Testimony of Lewis Barbe

---

[1] Decedent's ticket was purchased through Delta, a codeshare partner of Air France, which operated the flight.  Air France was not sued in this case.

and Memorandum of Law ("Barbe Motion"), which is being filed contemporaneously with this Motion.

Plaintiffs designated Manuel Raefsky ("Raefsky") as a liability expert to determine the safety of the surface of the step upon which Delgado fell. Raefsky Depo, attached as Exhibit 1, at 31. Raefsky considers himself an expert in metallurgy and metal failure analysis. *Id*. at 10. In his initial report, Raefsky opined that the mobile stairs were defective and "highly dangerous" to passengers because two steps were missing portions of the anti-skid strips at the nose of the steps and that Air France failed to properly maintain the stairs because the anti-skid strips were missing. Raefsky Initial Report, Ex. 2, at 7. Raefsky explained in his report that the missing anti-skid strips "provide more friction and traction than cleats alone, and they are a critical design safety element." *Id*. at 6.

In his rebuttal report, without having done any friction testing of his own, Raefsky criticized the friction testing performed by Delta's expert, Brian Grieser. Raefsky Rebuttal Report, Ex. 3, at 1-2. The rebuttal report also contained causation opinions that were not in his initial report—he opined that the missing anti-skid strip contributed to the fall due to the "elevation differential" resulting from the missing strip and the lack of a visual cue. *Id*. at 2.

In his deposition, after examining Delgado's shoes for the first time, Raefsky retracted his less "friction and traction" opinion contained in his initial report, and opined instead that Delgado tripped and fell because the toe of his shoe caught in an elevation differential of 0.033 inch. Ex. 1 at 98-9. He testified that Grieser's friction testing was irrelevant because Delgado tripped instead of slipped. *Id*. at 57, 88. His opinion that Delgado tripped is at odds with the opinion of Plaintiffs' other expert, Lewis Barbe, that Delgado slipped.

Raefsky's reports, CV, and deposition plainly reveal that he lacks qualifications to render any of these opinions, that his opinions were untested and have no cognizable basis in fact, science or sound methodology, and that they would be unhelpful to the trier of fact in deciding this case.  Thus, Raefsky's "expert" testimony is inadmissible pursuant to the standards dictated by Federal Rule of Evidence 702, *Daubert v. Merrell Down Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786 (1993), and *Kumho Tire v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167 (1999), and other relevant case law.

Accordingly, Delta seeks the exclusion of Raefsky as an expert witness for Plaintiffs not only because he is unqualified to render each of his opinions, but also because his theories are not premised on any generally accepted methodologies and are otherwise entirely unsubstantiated and unreliable, and would be unhelpful to the jury in evaluating the evidence and determining the facts in issue in this case.

**II.   RAEFSKY'S PURPORTED "EXPERT" TESTIMONY FAILS TO MEET THE APPLICABLE STANDARD FOR ADMISSIBILTY AND SHOULD BE PRECLUDED IN ITS ENTIRETY**

For the sake of brevity and to avoid redundancy, Delta adopts and incorporates by reference the general Rule 702 and *Daubert* legal argument contained in the Barbe Motion, Section II at pages 3-5.

Applying *Daubert* and its progeny, the Eleventh Circuit has consistently held that expert testimony may be admitted if three requirements are met:  (1) the expert is qualified to testify competently regarding the matters he or she intends to address; (2) the methodology used by the expert is reliable, as determined by a *Daubert* inquiry; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the

evidence or determine a fact in issue. *See Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir. 2010); *Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329, 1338 (11th Cir. 2003).

Here, notwithstanding Raefsky's complete lack of qualifications and failure to utilize any reliable methodologies in reaching his opinions, Raefsky purports to opine on the adequacy of Air France's stairway maintenance procedures and the cause of Delgado's fall on the mobile stairway. Raefsky performed no testing or scientific analysis, and did not rely on any studies or other published materials. He did nothing more than read depositions and the Gendarmerie report, measure an exemplar step, and take photos of Delgado's shoe on that step. His conclusory opinions are based on nothing more than speculation and unsupported assumptions. Because, as we show below, Raefsky's proffered opinions fail to satisfy ***any*** of the essential requirements for admissible expert testimony, Plaintiffs should be precluded from offering Raefsky's purported expert opinion testimony at trial.

### A. Raefsky Has No Qualifications to Render his "Expert" Opinions

The first factor this Court must consider in evaluating the admissibility of Raefsky's opinion testimony is whether he is qualified by his "knowledge, skill, experience, training, or education" to testify competently regarding the matters he intends to address. Fed. R. Evid. 702. The court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tires,* 526 U.S. at 157; *accord Kilpatrick,* 613 F.3d at 13.

Raefsky is not qualified to testify about any of the topics of his proffered testimony. Raefsky is a metallurgist with a subspecialty in failure analysis of metals. Ex. 1 at 10, 12. He is retired from an expert witness consulting firm, where he primarily investigated the cause of

4

failure of metal components in product liability litigation settings. *Id*. at 9-11, 16. This experience does not qualify him to offer expert testimony regarding the mobile stairway maintenance practices in the airline industry or the cause of Delgado's fall on a mobile stairway. He has never been employed by an airline. *See* Raefsky CV, Ex. 4.

Raefsky admits that a human factors expert is needed to determine the forces exerted by a person walking down a step to ascertain whether insufficient traction caused Delgado to fall, Ex. 1 at 58, but he is not an expert in human factors, biomechanics, or ergonomics. *Id*. at 34. Raefsky has also never played a role in the design or maintenance of a mobile staircase or any staircase for commercial use. *Id*. at 61. He has never been involved in promulgating any standards for mobile staircases, the surface of steps, or any walking surface. *Id*. at 62. Raefsky has never conducted any friction or slip resistance testing in his career. *Id*. at 23.

Therefore, Raefsky lacks the requisite knowledge, education, training and experience to testify as an expert concerning the adequacy of the airline's stairway maintenance procedures or the cause of Delgado's fall on the mobile stairway. Nothing about his experience in metallurgy or quality control qualifies him to opine on these subjects. Without airline expertise or experience in maintaining mobile staircases for use by airlines and in friction testing, he cannot know whether the subject stairs were safe, serviceable, and operational at the time of the incident. Thus, Raefsky's expert testimony should be excluded because he is not qualified to testify on any of the matters he intends to address. *See Montgomery v. Noga,* 168 F.3d 1282, 1302 (11th Cir. 1999) (affirming exclusion of expert testimony where it was established that expert's background was in licensing of commercial banking software but litigation concerned "shareware" marketed using "shrink-wrap" license; "defendants had not shown that [expert's] experience with banking software was germane to issues involved in the case"). *See also United*

*States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005) (expert not qualified to testify concerning issue at hand); *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1261-62 (11th Cir. 2004) (same).

### B. Raefsky's "Expert" Opinions Regarding Causation are Unreliable

The second factor for this Court to analyze is whether Raefsky's purported expert testimony is reliable—that is, whether it's "based upon sufficient facts and data" and the product of "reliable principles and methods" applied "reliably to the facts of the case." Fed. R. Evid. 702. It is this Court's responsibility to exclude an expert's "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590; *see also McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (holding that *Daubert* requires trial courts to act as "gatekeepers" to "ensure that speculative, unreliable expert testimony does not reach the jury"). "The expert's bald assurance of validity is not enough." *Competitive Tech., Inc. v. Fujutsu, Ltd.,* 333 F.Supp.2d 858, 880 (N.D. Cal. 2004). Instead, the proponent of the evidence must show that the expert's findings "are based on sound science, and this will require objective, independent validation of the expert's methodology." *Id.* (citing *Daubert,* 509 U.S. at 592-94).

The Eleventh Circuit has explicitly cautioned courts not to admit "speculation, conjecture, or inference that cannot be supported by sound scientific principles. The courtroom is not the place for scientific guesswork, even of the inspired sort." *Rider v. Sandoz Pharms. Corp.,* 295 F.3d 1194, 1197 (11th Cir. 2002) (citations and internal quotation marks omitted) (upholding exclusion of expert testimony where expert could not set forth reliable theories or opinions in support of alleged causal connection between drug manufacturer and plaintiffs' alleged injuries); *see also Hudgens,* 328 F.3d at 1344 (striking of expert testimony affirmed where expert offered no explanation for how he formed his opinions and failed to explain theories with the sort of "precision and logic" that would allow court to properly assess them).

6

The Supreme Court articulated a non-exhaustive list of factors to be considered In deciding the question of reliability: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication;  (3) the known or potential rate of error of the particular scientific theory; and (4) whether the theory is generally accepted in the scientific community.  *Daubert*, 509 U.S. at 593-95; *United Fire & Cas. Co. v. Whirlpool Corp.,* 704 F.3d 1338, 1341 (11th Cir. 2013).  Ultimately, the expert must establish that his opinions "have a reliable basis in the knowledge and experience of his discipline." *Id*. at 592.  This standard is satisfied only if the expert demonstrates that his opinions "have been arrived at in a sound and methodologically reliable fashion."  *Ruiz-Troche v. Pepsi-Cola of Puerto Rico,* 161 F.3d 77, 85 (1st Cir. 1998).  *Accord Daubert,* 509 U.S. at 590.

As detailed below, all of Raefsky's proffered opinions should be excluded because they are purely speculative and unreliable.  They are not based upon "sufficient facts and data and are not the product of "reliable principles and methods." Indeed, Raefsky's opinions are untested and are completely inconsistent with all of the competent evidence in this case, including physical evidence, objective eyewitness accounts, and the comprehensive investigative report of the French police.  Raefsky's opinions are so uninformed and baseless that they cannot possibly be admitted.  We address each of Raefsky's proposed opinions in turn:

> i. *Opinion No. 1 - Delgado tripped on the eleventh step from the bottom because of an 0.033 inch elevation differential caused by the missing anti-skid strip*

Raefsky intends to opine that the absence of the 7/16 inch wide anti-skid tape on a recessed section of a step near the location of the fall caused Delgado to trip because it created an elevation differential of 0.033 inches, when compared to the other steps. Ex. 1 at 33, 46, 57, 99. Raefsky's opinion that Delgado tripped has no scientific basis whatsoever and is pure conjecture.

This theory is not based on insufficient data—it is based on *no data at all*. Indeed, the exact location of Delgado's fall is indisputably unknown, and, in any event, there is simply no proof that a person can trip because of a difference in height of 33 thousandths of an inch.

Ironically, by the time Raefsky's opinions were fully formed at the time of his deposition, his causation opinion was inconsistent with the opinion of Plaintiffs' other expert, Lewis Barbe, who opined that Delgado fell because he ***slipped*** and/or was pushed. *See* Barbe Motion, and Ex. 1 at 33, 57. Raefsky's proffered "trip and fall" opinion is also completely inconsistent with all of the credible evidence in this case indicating that the condition of the steps was not an issue, including the Gendarmerie report, and the testing done by Delta's expert. The Gendarmerie report notes the absence of a 58 cm portion of the anti-skid tape on step eleven of the mobile staircase. Gendarmerie, Piece 2, p.5, attached as Ex. 5. But the Gendarmerie also concluded that "[t]he absence of the anti-skid tape does not alter the step's condition in dry weather conditions (which was the case)." *Id.* Further, the Gendarmerie concluded that no "moist, oily, or bulky substance that may have caused slipping or a loss of balance" was found. *Id.*

Raefsky admits that his opinions are all based on the accuracy of his assumption that Delgado fell on step eleven, which was missing a portion of the anti-skid strip. But Raefsky's assumption that Delgado fell on the eleventh step is based on speculation. Not a single eyewitness could identify the exact location of where Delgado fell. The police speculated that he fell near the eleventh step from the bottom because the Air France gate agent standing several yards away from the bottom of the staircase, "without being specific," "indicated that this step was close to the place where Mr. Delgado had fallen." *Id*. at 5. Raefsky admitted that the gate agent was not at a vantage point where she could actually tell which step Delgado fell on. Ex. 1 at 82-3.

8

Raefsky also admitted he did not know where Delgado impacted his head.  Ex. 1 at 86-7. He acknowledged that the Gendarmerie concluded that the point of impact of Delgado's head was on the tarmac at the base of the stairs, but he does not know if that is consistent with a fall originating at the eleventh step.  *Id*.  Raefsky admitted that the Gendarmerie did not find any evidence that Delgado impacted his head on the staircase, but his reaction to that was: "so what?" *Id*. at 87-8.  Raefsky assumed the fall occurred at step eleven because that is where there was a different condition —a portion of the anti-skid strip was missing.  *Id*. at 81, 86.  In other words, he reasoned that because the anti-skid strip was missing on step eleven, that must be where Delgado fell.  Such circular, ipsi dixit, reasoning renders his opinions inadmissible.  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1111 (11th Cir. 2005) (a court may exclude opinion evidence "which is connected to existing data only by the ipse dixit ['he himself said it'; an assertion without supporting proof] of the expert.").  Other than the speculation in the Gendarmerie report, Raefsky has no basis for his assumption that Delgado fell on a step with a missing piece of anti-skid strip.

There is also no basis for his opinion that the missing anti-skid strip caused Delgado to fall because Raefsky conducted no testing and performed no independent research. Ex. 1 at 36. Raefsky sought to demonstrate his opinion through a photograph he took of Delgado's shoe positioned over an exemplar step.  *See* Ex. 6.  In this photograph, Raefsky was attempting to demonstrate that the hard edge of the sole at the toe of Delgado's shoe could have gotten caught on one of the metal ridges on the nose of the step. Ex. 1 at 78-9.  Raefsky stated that this photo "is attempting in a half-baked way to recreate what the shoe would see if the strip was missing." *Id*. at 78.

9

Raefsky disagreed that the angle of the shoe in the photograph was an unnatural angle for somebody stepping on a stair. *Id*. But he has clearly done no research or testing to determine the position of a shoe vis-à-vis the step when a person is walking down a staircase. *Id*. at 79. Nor has he actually paid attention to how he walks down stairs—because he claims he walks down on his toes. *Id*. Any layperson walking down stairs would recognize that the ball of the foot, not the tip of the toe, first makes contact with a step. *See also* Brian Grieser Depo., Ex. 7, at 80.

Raefsky's photograph (Ex. 6) also fails to show the entire shoe and step. Had they both been shown, it would have been apparent that the toe of the shoe would have extended over the end of the step, and thus not have been in a position where it could catch a metal ridge and cause a trip. In another photo taken by Raefsky, he shows the measurement of the length of Delgado's shoe. *See* Ex. 8. The shoe is approximately 10 1/2 inches long.[2] The exemplar step is 11 3/4 inches wide without the riser. Ex. 1 at 42. With a riser attached to the back of the step, the width would be smaller. A layperson would know that people walking down stairs want to avoid scraping the back of the heel and Achilles tendon on the riser. Even Raefsky acknowledges the foot will go towards the front of the step, and not back where the riser is. Ex. 1 at 79-80. Therefore, the foot would probably land with the heel a few inches in front of the riser. Considering the length of Delgado's shoe, the only logical assumption is that his toe would have extended beyond the leading edge of the steps, and could not have caught on one of the metal ridges.

The most absurd element of Raefsky's "trip and fall" opinion is his claim that Delgado fell because of a 0.033 inch elevation differential caused by the missing strip. Raefsky measured the thickness of the anti-skid strip to be 0.033 inch. The strip, which can be seen in Raefsky's

---

[2] Despite several requests, Delgado's shoes have not yet been produced to Delta for its expert to inspect them, so Delta does not have the ability to compare the shoe with the step.

photograph (Ex. 6), is normally affixed in a recessed area between two rows of six metal ridges at the leading edge of the step. The "valley" between the metal ridges is 0.057 inch. Ex. 1 at 45. Incredulously, Raefsky believes that lack of the anti-skid strip created a tactile difference in the eleventh step that Delgado would not be able to detect through his half-inch soles, but it nevertheless caused his toe to get caught and he fell. *Id*. at 98-9.

Of course, Raefsky did not cite any research to collaborate his finding that a 0.033 inch elevation differential could cause someone to trip. He also has no basis for an opinion that the metal ridge, which is 0.057 inch high, is a tripping hazard. Indeed, the industry standards are contrary to Raefsky's opinion. The 2010 ADA Standards For Accessible Design from the Department of Justice, Section 303 "Changes in Level," defines a trip hazard as being a change in level of a quarter of an inch or more. Ex. 7 at 97. The Standard Practice for Safe Walking Surfaces, the ASTM F1637-10, section 5.2.2 also has the one quarter (0.25) inch standard for trip hazard. *Id*. at 96-7. A quarter inch is almost five times more than the height of the metal ridges on the step, and over seven times the elevation differential of the 0.033 thick anti-skid strip. Thus, Raefsky's opinion that Delgado tripped over such tiny ridges on the steps is entirely illogical, and such testimony should not be allowed.

Without having conducted any testing on the step, Raefsky's "dangerous step" opinion was entirely speculative and should be excluded. *See Eberli v. Cirrus Design Corp*., 615 F.Supp.2d 1357, 1367 (S.D. Fla. 2009)(where expert conducted no testing or comparison of engines and did not utilize any methodology his opinion that the breather line should have been located in the rear of the engine must be excluded); *McCool v. Bridgestone/Firestone N. Am. Tire, LLC,* 2006 WL 6869374, at \*\*3-4 (S.D. Fla. Feb. 3, 2006) (excluding opinion testimony of

plaintiff's expert where theory of tire defect was untested and without peer review or acceptance).

Unlike Raefsky, Delta's expert, Brian Grieser, conducted a slip-resistance analysis of the exemplar step and came to the same conclusion as the Gendarmerie—that the absence of the anti-skid strip does not alter the step's condition. Grieser observed that the metal step contains a prominent series of ridges that run across its width, and the tape itself was thin and located in a recessed groove between two series of taller ridges. Expert Report of Brian C. Grieser, Ex. 9. According to the testing conducted, the metal ridges, not the tape, "made the step slip resistant under all the conditions tested: with and without tape, and both dry and wet," and "[t]he presence of the tape had no substantial effect on the step's slip resistance." *Id.* at 7, 8. Without performing any type of testing or analysis on the exemplar step, Raefsky cannot rebut its anti-skid quality. In fact, Raefsky did not disagree with the results of Grieser's friction testing; instead, he claimed the tests were irrelevant because he thinks Delgado tripped. Ex. 1 at 57.

Given that Raefsky's "dangerous step" opinion is purely speculative and unsubstantiated, it should be excluded at trial. *See Daubert,* 509 U.S. at 590; *McCorvey*, 298 F.3d at 1256.

       ii.      *Opinion No. 2 - The missing anti-skid tape on a section of step eleven caused Delgado's fall because he lost a visual cue*

Raefsky's theory that the absence of the anti-skid tape on a portion of step eleven caused Delgado's fall because he lost a visual cue likewise has no evidentiary foundation. Rebuttal Report (Ex. 3) at 2; Ex. 1 at 33. The "lack of visual cue" opinion is suspect because Raefsky admittedly did not consider it until his rebuttal report. *Id*. at 80. According to Raefsky, without the entirety of the one-centimeter black tape at the leading edge of the eleventh step, an individual would not know where the edge of the step was and it cause him to fall. *Id.* at 93. This theory has absolutely no scientific or factual support. A necessary predicate to the

admission of scientific evidence is that the principle upon which it is based "be sufficiently established to have gained general acceptance in the particular field to which it belongs." *United States v. Kilgus,* 571 F.2d 508, 510 (9th Cir. 1978). Although Raefsky explained that missing anti-skid tape violated a principle of "uniformity" by interrupting a person's cadence or rhythm, he has no basis for this premise. He also admitted that there was at least one other visual cue— the handrails leading down on either side of the staircase. *Id*. at 93-4. He further acknowledged that people walking down uniform stairs develop a rhythm and cadence and do not need to look down to safely descend the steps. *Id*. at 96-7.

Moreover, the underlying factual predicates for Raefsky's theory—that Delgado was looking down at the steps as he descended the stairway, and that he fell at the eleventh step—are entirely speculative. Obviously, if Delgado was not looking down, then the lack of a visual cue would make no difference. No witness testified that Delgado was walking down the stairway peering downward. And it simply defies logic that, after proceeding down at least fourteen of the twenty-five steps in the stairway, Delgado would be looking down at each step for the black anti-skid tape to ensure his safe descent. As Raefsky readily acknowledged, it usually takes only a few steps to develop a rhythm or cadence in the manner of descent. *Id*. at 96. Plus, there were several other visual cues that Raefsky ignored — the railing, the zig-zag shadows, and the remaining 85 cm. of anti-skid strip on the eleventh step. Ex. 7 at 54. Thus, Raefsky's opinion drawn from that deficient predicate is similarly speculative, and therefore impermissible. *See Eastern,* 795 F.2d at 337 (expert's opinion should be excluded when based on assumptions that are speculative and not supported by record).

>   iii.   *Opinion No. 3 - Air France's documented procedures for maintenance of passenger stairs are inadequate*

Raefsky's opinion that Air France improperly maintained the staircase fails and should be excluded if his opinions that the steps were dangerous because of the missing anti-skid strip are excluded. Without evidence that the steps were unsafe because of the missing anti-skid strips on two of the 25 steps, Air France's alleged improper maintenance of the staircase in failing to replace the strips is irrelevant.

Additionally, Raefsky's opinion about Air France's maintenance practices is based on insufficient and questionable data. His opinion that Air France should have immediately replaced the anti-skid strips every time they were found missing is based mostly on a garbled checklist purportedly prepared by the manufacturer of the ABS-580 mobile staircase, which is attached as Ex. 10. This TLD Vehicle Daily Checklist was emailed to Raefsky by Plaintiffs' counsel, who allegedly received it from the current manufacturer of the ABS-580. Ex. 1 at 67. This document was created in 2006 or 2007, but the subject staircase was delivered to Air France in 2001. *Id*. at 68. The document was probably originally written in another language and very poorly translated into English. *Id*. at 67. The following phrase upon which Raefsky relies is nonsensical: " Check no-skid coating/covering on sowel and gates. Clean is prehension system is dirty or if snow. Maintenance, and coating replacement can envisaged." Ex. 10 at 2. Raefsky has no idea what a "sowel" is, Ex. 1 at 69, and there does not appear to be any such word in the English language. Although the checklist appears to relate only to the truck portion of the mobile staircase, he chose to interpret this phrase to mean that the operator should check for the presence of the anti-skid strips on the stairs during every operation and replace them immediately. *Id*. at 69-74. He has no idea if the manufacturer sent this Vehicle Daily Checklist

to Air France, and he has never spoken to the manufacturer or seen a maintenance manual for the ABS-580.  *Id.* at 70-1.

Absent a review of these materials, Raefsky lacked any cognizable factual basis for his opinion that Air France's maintenance procedures are insufficient, and thus this opinion must be excluded as speculative.  *McCorvey*, 298 F.3d at 1256 (expert opinion based on insufficient facts or data must be excluded as speculative).  He also failed to make the requisite showing how his so-called "experience" led to the conclusion reached, why his experience formed a sufficient basis for his opinion and how his experience was reliably applied to the facts.  *Frazier,* 387 F.3d at 1261.  Again, Raefsky admittedly had no experience working for an airline or designing or maintaining a mobile staircase.  Without establishing a delineated link between his experience, methods, and ultimate opinion, Raefsky could not persuasively rely on his experience in formulating this opinion, and thus the opinion must be excluded.  *Frazier,* 387 F.3d at 1261; *Rider*, 295 F.3d at 1197.  Raefsky's opinion on this issue must be excluded because it is not supported by sufficient facts or data.  *McCorvey*, 298 F.3d at 1256; *Rider,* 295 F.3d at 1197.

### C.   Raefsky's Proposed Expert Opinions Would Offer No Assistance to the Trier of Fact

Finally, in addition to the lack of qualifications to render his proffered expert opinions and the inherent unreliability of his opinions, Raefsky's proposed opinion testimony must be excluded because it would be of no value to the trier of fact.  *See Frazier*, 387 F.3d at 1262-63 ("The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact.  By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."); *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) ("Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own."); *United States v. Amuso*,

15

21 F.3d 1251, 1263 (2d Cir. 1994) ("A district court may commit manifest error by admitting expert testimony where . . . the subject matter of the expert's testimony is not beyond the ken of the average juror."); *United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994) (quoting Fed. R. Evid. 702 advisory committee's note) ("'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'").

Here, Raefsky testified that his opinions regarding the purported inadequacy of Air France's documented maintenance procedures for the stairways were premised upon his experience in quality control and an incomprehensible vehicle daily checklist of questionable origin and reliability. But he did not identify any specialized or technological expertise he utilized to bear upon this issue that is outside the understanding of an average juror. A juror who has walked down stairs would have the same experience as Raefsky, thus rendering Raefsky's opinions unnecessary and unhelpful to the jurors.

Likewise, Raefsky's opinions regarding the missing anti-skid tape had no scientific support and were purely conjectural. Thus, these opinions, too, were not premised on any scientific, technical, or specialized knowledge or expertise and would offer no assistance to the trier of fact because they do not concern matters beyond the understanding of the average lay person. For this reason, too, they should be excluded. *Frazier*, 387 F.3d at 1262-63.

//

//

//

## CONCLUSION

WHEREFORE, for all of these reasons, Defendant Delta respectfully requests that this Court enter an order excluding Manuel Raefsky's proposed expert witness testimony.

Dated: July 15, 2013

          HOLLAND & KNIGHT LLP
          *Attorneys for Defendant Delta Air Lines, Inc.*
          701 Brickell Avenue, Suite 3000
          Miami, Florida  33131
          Telephone: (305) 374-8500
          Facsimile: (305) 789-7799

By: s/Lyndall M. Lambert
    Lyndall M. Lambert
    Florida Bar No. 308013
    lyndall.lambert@hklaw.com

    Christopher G. Kelly
    NY Bar # 2097624
    christopher.kelly@hklaw.com
    Sarah G. Passeri
    NY Bar # 4740015
    sarah.passeri@hklaw.com
    HOLLAND & KNIGHT LLP
    31 West 52nd Street
    New York, New York 10019
    (212) 513-3264

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of July, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

            s/ Lyndall M. Lambert
            Lyndall M. Lambert

**SERVICE LIST**

| | |
|---|---|
| Steven C. Marks, Esq.<br>smarks@podhurst.com<br>PODHURST ORSERCK, P.A.<br>25 West Flagler Street, Suite 800<br>Miami, FL 33130<br>Telephone: (305) 3589-2800<br>Facsimile: (305) 358-2382<br>***Attorney for PLAINTIFFS***<br>Service via transmission of Notices of Electronic Filing generated by CM/ECF | |