UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-CV-23272-Graham/Goodman

SONIA DELGADO, JUAN ENRIQUE
DELGADO & JACQUELINE CABRERA, as
co-Personal Representatives of the Estate of
Juan Delgado, Deceased

       Plaintiffs,

v.

DELTA AIR LINES, INC.

       Defendant.

_____/

## DELTA'S MOTION TO EXCLUDE OPINION TESTIMONY OF LEWIS BARBE AND MEMORANDUM OF LAW

Defendant Delta Air Lines, Inc. ("Delta") moves for the entry of an order excluding from evidence the opinion testimony of Plaintiffs' purported expert, Lewis Barbe.

**I.     INTRODUCTION**

This action arises from the death of Juan Delgado ("Delgado" or "decedent"), an 80 year-old man who fell on an ABS-580 mobile staircase while disembarking from an Air France 747 aircraft in Paris on May 31, 2012 after a nine-hour flight from Miami.  Delgado was pulling a twenty-two pound, two-wheeled roller luggage, with an eight-pound over-the-shoulder bag stacked on top of it, down the stairs behind him while descending the mobile staircase.  Near the bottom of the staircase, at an unknown step, Delgado fell and tumbled down the remaining stairs and landed on the tarmac.  Although other passengers, including Plaintiffs (Delgado's family members) and their traveling companions, were deplaning behind him, not one of these individuals actually saw what caused Delgado to fall.  When he fell, Delgado struck his head and

allegedly sustained a serious head trauma as a result.  He was taken to a local hospital in Paris, where, days later, his doctors and family ultimately decided to discontinue life support.

Immediately following the incident, the Gendarmerie (the French police) conducted a comprehensive investigation, in which they interviewed witnesses to the fall, including two Plaintiffs and Air France cabin crew and ground personnel, took photographs, collected evidence, and seized and inspected the mobile staircase.  In its published report, the Gendarmerie did not attribute any blame to Air France or the mobile staircase for Delgado's fall.  Gendarmerie Report, Piece 2, attached as Exhibit 1.  Despite the thorough investigation, the exact location on the mobile staircase and cause of Delgado's fall, remain unknown.  *Id*. at 5.  Sarah Jamy, a fellow passenger who saw Delgado falling testified to the French police that everyone on the staircase was walking slowly, there was no one near Delgado at the time of the fall, and it appeared that Delgado simply missed a step.  Sarah Jamy Statement, Ex. 2.

Plaintiffs filed suit against Delta for wrongful death under Article 17 of the Montreal Convention, the applicable law in this action.[1]

Plaintiffs designated Lewis Barbe ("Barbe"), a safety engineer, as a liability expert to analyze Air France's practices and procedures relating to disembarkation and maintenance and assess whether Air France's conduct caused Delgado's fall. Plaintiff's Expert Witness Disclosure, Ex. 3, at 1.  In his initial and rebuttal reports, Barbe opined that Air France did not have adequate documented procedures for safe passenger disembarkation or for the maintenance of the passenger stair surfaces, and that Delgado's fall was caused by an unsafe condition created by Air France, a chaotic disembarking process, or the lack of a one-centimeter wide anti-skid tape on a recessed section of one of the stairs around the location of the fall.  Barbe Initial Report, Ex. 4, at

---

[1]  Decedent's ticket was purchased through Delta, a codeshare partner of Air France, which operated the flight.  Air France was not sued in this case.

2; Barbe Rebuttal Report, Ex. 5, at 1-2.  During his recent deposition, Barbe appeared to conflate all three of these opinions in concluding that the missing anti-skid tape and lack of adequate warnings compounded by the alleged rush of passengers exiting the aircraft caused Delgado's fall.  Barbe Depo., Ex. 6, at 73, 95, 109, 112, 117, 146, 172, 174, 176, 192-95).  However, Barbe's deposition plainly revealed that he has no qualifications to render any of these opinions, that his opinions were untested and lack any cognizable basis in fact, science or sound methodology, and that they would be unhelpful to the trier of fact in deciding this case.  Thus, Barbe's "expert" testimony is inadmissible pursuant to the standards dictated by Federal Rule of Evidence 702, *Daubert v. Merrell Down Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786 (1993); *Kumho Tire v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167 (1999); and other relevant case law.

Accordingly, Delta seeks the exclusion of Barbe as an expert witness for Plaintiffs not only because he is patently unqualified to render each of his opinions, but also because his theories are not premised on any generally accepted methodologies and are otherwise entirely unsubstantiated and unreliable, and would be unhelpful to the jury in evaluating the evidence and determining the facts in issue in this case.

## II.   BARBE'S PURPORTED "EXPERT" TESTIMONY FAILS TO MEET THE APPLICABLE STANDARD FOR ADMISSIBILTY AND SHOULD BE PRECLUDED IN ITS ENTIRETY

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule, as explained by the Supreme Court in *Daubert*, controls the admissibility of expert testimony.   In short, for proffered expert testimony to be admissible, the witness must be adequately qualified to express an opinion on the matter in issue, and the opinion testimony must be reliable and must assist the trier of fact in understanding the evidence or in determining a fact in issue.  *Id*. at 589.  "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004).  The Supreme Court in *Daubert* held that Rule 702 requires district courts to serve as evidentiary "gatekeepers" who must conscientiously screen expert testimony for relevance and reliability.  *Id.* at 597; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 158 (1999) (clarifying that *Daubert* gatekeeping function applies to *all* forms of expert testimony).

The reliability inquiry requires the district court to assess whether the reasoning or methodology underlying the expert's testimony is valid.  *See Daubert,* 509 U.S. at 593.  The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.  *Id.* at 590.  Applying this standard, the Eleventh Circuit has held that a district court may exclude expert testimony that is "imprecise and unspecific" or whose factual basis is not adequately explained. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1111 (11th Cir. 2005).   A court may also exclude opinion evidence "which is connected to existing data only by the ipse dixit ['he himself said it'; an assertion without supporting proof] of the expert."  *Id.* at 1111. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"  *See* Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments) (quoting *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (on remand)).  While expertise based on experience is acceptable, "[i]f the witness is relying solely or primarily on experience, then ***the witness*** must explain how that experience

leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier,* 387 F.3d at 1261 (quoting Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments) (emphasis added)) (quoted in *Unleashed Magazine, Inc. v. Orange County, Fla.*, 2008 WL 4304883, at *9 (M.D. Fla. Sept. 16, 2008) (granting defendants' motion to exclude plaintiff's expert in trademark infringement case on ground that expert had not clearly delineated link between experience, methods, and ultimate opinion)).

The second part of the district court's inquiry pursuant to its gatekeeping function is whether the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact in issue, i.e. whether it's relevant. *Daubert,* 509 U.S. at 591. Such testimony is admissible only if it "concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262-63.

Applying *Daubert* and its progeny, the Eleventh Circuit has consistently held that expert testimony may be admitted if three requirements are met: (1) the expert is qualified to testify competently regarding the matters he or she intends to address; (2) the methodology used by the expert is reliable, as determined by a *Daubert* inquiry; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue. *See Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir. 2010); *Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329, 1338 (11th Cir. 2003).

Here, notwithstanding Barbe's complete lack of qualifications and failure to utilize any reliable methodologies in reaching his opinions, Barbe purports to opine on the adequacy of Air France's documented procedures for disembarkation and maintenance of passenger stairs as well as the cause of Delgado's fall on the mobile stairway. More specifically, Barbe intends to testify

5

that Delgado was most likely pushed or shoved by other hurried passengers disembarking from the late-arriving flight, and that, even if he was not pushed or shoved, he was forced the descend the stairs at an unsafe rate of speed by the rushing passengers on the stairway.  According to Barbe, if Air France would have warned its passengers regarding the dangers of mobile stairways and properly trained its personnel to control passenger flow during disembarkation, Delgado's fall could have been avoided.  Barbe also plans to testify that the missing black anti-skid tape on a section of the eleventh step of a mobile staircase - when no one saw the step on which Delgado began his fall - constituted a dangerous condition causing Delgado's fall because it made the step more slippery and rendered the staircase defective due to the lack of a visual cue.

Without performing any testing or scientific analysis and without relying on any studies or other published materials, Barbe relies on certain testimony of Delgado's family members and his own "personal experience" that Delgado's fall was caused by an unsafe condition created by Air France.  This Court should decline Mr. Barbe's invitation to "take his word" on the cause of Delgado's fall.  Barbe's assurances of reliability are ipse dixit in nature, and not, in way, deductions or reductions, but are simply his own speculation.  Because, as we show below, Barbe's proffered opinions fail to satisfy *any* of the essential requirements to admit expert testimony, Plaintiffs should be precluded from offering his purported expert opinion testimony at trial.

### A.    Barbe Has No Qualifications to Render his "Expert" Opinions

The first factor this Court must consider in evaluating the admissibility of Barbe's opinion testimony is whether Barbe is qualified by his "knowledge, skill, experience, training, or education" to testify competently regarding the matters he intends to address.  Fed. R. Evid. 702. The court must "make certain that an expert, whether basing testimony upon professional studies

or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tires,* 526 U.S. at 157; *accord Kilpatrick,* 613 F.3d at 13.

Barbe is not qualified to testify about any of the topics of his proffered testimony.  Barbe is a professional safety engineer.  Ex. 6 at 5.  He formulates and implements total loss and safety programs for products, facilities, equipment, services, and companies.  Ex. 6 at 31.  This experience does not qualify him to offer expert testimony regarding the airline industry, passenger disembarkation procedures, or the cause of Delgado's fall on an aircraft's mobile stairway after a nine-hour transatlantic flight over multiple time zones.  He has never been employed by an airline.  Ex. 6 at 27-28.  He has done no consulting work for an airline. Ex. 6 at 28-29).  And he has never written a policy and procedure manual for an airline. Ex. 6 at 204.  Indeed, he has no professional experience in the aviation industry apart from a one-year employment in the 1960's at a railway equipment company that happened to manufacture jetways. Ex. 6 at 28.  Barbe has also never played a role in the design or maintenance of a mobile staircase. Ex. 6 at 62.  He has never even inspected an ABS-580 mobile staircase like the one at issue in this case. Ex. 6 at 85.  His education is in fire protection and safety engineering.  Ex. 6 at 22; Barbe CV, Ex. 7;.  Although Barbe has repeatedly testified as an expert witness, he has never been involved in a case involving a person who fell on a mobile staircase disembarking from an aircraft. Ex. 6 at 33-36.

In sum, Barbe lacks the requisite knowledge, education, training and experience to testify as an expert concerning the adequacy of the airline's policies or procedures or the cause of Delgado's fall on an aircraft's mobile stairway.  Nothing about his experience as a safety engineer qualifies him to opine on these subjects.  Without aviation or airline expertise, he cannot opine

on airline safety procedures because he does not understand the operational, staffing, safety, and security complexities and practicalities involved in promulgating policies and procedures for disembarking passenger aircraft.  With no experience in maintaining mobile staircases for use by airlines and in friction testing, he does not know one way or the other whether the subject stairs were safe, serviceable, and operational at the time of the incident.   Thus, Barbe's expert testimony should be excluded because he is not qualified to testify on any of the matters he intends to address.[2] *See Montgomery v. Noga,* 168 F.3d 1282, 1302 (11th Cir. 1999) (affirming exclusion of expert testimony where it was established that expert's background was in licensing of commercial banking software but litigation concerned "shareware" marketed using "shrink-wrap" license; "defendants had not shown that [expert's] experience with banking software was germane to issues involved in the case").  *See also United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005) (expert not qualified to testify concerning issue at hand); *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1261-62 (11th Cir. 2004) (same).

### B.      Barbe's "Expert" Opinions Regarding Causation are Unreliable

The second factor for this Court to analyze is whether Barbe's purported expert testimony is reliable—that is, whether it's "based upon sufficient facts and data" and the product of "reliable principles and methods" applied "reliably to the facts of the case." Fed. R. Evid. 702.  It is this Court's responsibility to exclude an expert's "subjective belief or unsupported speculation."  *Daubert,* 509 U.S. at 590; *see also McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (holding that *Daubert* requires trial courts to act as

---

[2] Barbe was similarly excluded for lack of qualifications in a Delaware case when he sought to testify regarding the standard of care for public ice rinks in management, supervision, and training of ice guards.  *See Farrell v. Univ. of Delaware,* 2009 WL 5176218, at **2-4 (Del. Super. Ct. Nov. 24, 2009).  The court found that Barbe's education and experience in safety engineering did not furnish a basis for him to offer expert testimony on the discrete issues of management of ice rinks or training of ice guards.

"gatekeepers" to "ensure that speculative, unreliable expert testimony does not reach the jury"). "The expert's bald assurance of validity is not enough." *Competitive Tech., Inc. v. Fujutsu, Ltd.,* 333 F.Supp.2d 858, 880 (N.D. Cal. 2004). Instead, the proponent of the evidence must show that the expert's findings "are based on sound science, and this will require objective, independent validation of the expert's methodology." *Id.* (citing *Daubert,* 509 U.S. at 592-94).

The Eleventh Circuit has explicitly cautioned courts not to admit "speculation, conjecture, or inference that cannot be supported by sound scientific principles. The courtroom is not the place for scientific guesswork, even of the inspired sort." *Rider v. Sandoz Pharms. Corp.,* 295 F.3d 1194, 1197 (11th Cir. 2002) (citations and internal quotation marks omitted) (upholding exclusion of expert testimony where expert could not set forth reliable theories or opinions in support of alleged causal connection between drug manufacturer and plaintiffs' alleged injuries); *see also Hudgens,* 328 F.3d at 1344 (striking of expert testimony affirmed where expert offered no explanation for how he formed his opinions and failed to explain theories with the sort of "precision and logic" that would allow court to properly assess them).

The Supreme Court articulated a non-exhaustive list of factors to be considered In deciding the question of reliability: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific theory; and (4) whether the theory is generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-95; *United Fire & Cas. Co. v. Whirlpool Corp.,* 704 F.3d 1338, 1341 (11th Cir. 2013). Ultimately, the expert must establish that his opinions "have a reliable basis in the knowledge and experience of his discipline." *Id*. at 592. This standard is satisfied only if the expert demonstrates that his opinions "have been

arrived at in a sound and methodologically reliable fashion." *Ruiz-Troche v. Pepsi-Cola of Puerto Rico,* 161 F.3d 77, 85 (1st Cir. 1998). *Accord Daubert,* 509 U.S. at 590.

As detailed below, all of Barbe's proffered opinions should be excluded because they are purely speculative and unreliable. They are not based upon "sufficient facts and data and are not the product of "reliable principles and methods." Indeed, Barbe's opinions are untested and are completely inconsistent with all of the competent evidence in this case, including physical evidence, objective eyewitness accounts and the comprehensive investigative report of the French police. Barbe's opinions are so uninformed and baseless that they cannot possibly be admitted. Barbe's proposed opinions are addressed in turn:

  i.    *Opinion No. 1 - Air France's documented procedures for disembarkation are inadequate*

Barbe postulates that Air France's documented disembarkation procedures are inadequate because they fail to provide adequate warnings to passengers regarding mobile stairways and fail to train crew members to properly manage the flow of passengers at disembarkation, particularly where an aircraft is delayed at arrival. Ex. 6 at 73, 74, 192-93, 195. He testified that he formed this opinion relying on his "experience and expertise" and after reviewing certain unspecified standards from the International Standards Organization "dealing with warnings, slip, trips and falls." Ex. 6 at 72. However, Barbe readily admitted at his deposition that he has never even reviewed any of Air France's policies, procedures, or training manuals, any of Delta Air Lines' policies, procedural or training manuals, or any of the policies, procedures, or manuals for other airlines for comparison purposes. Ex. 6 at 46, 205. Absent a review of these materials, Barbe lacked any cognizable factual basis for his opinion that Air France's procedures are insufficient, and thus this opinion must be excluded as speculative. *McCorvey*, 298 F.3d at 1256 (expert opinion based on insufficient facts or data must be excluded as speculative). He also failed to

make the requisite showing how his so-called "experience" led to the conclusion reached, why his experience formed a sufficient basis for his opinion and how his experience was reliably applied to the facts. *Frazier,* 387 F.3d at 1261.  Again, Barbe admittedly had no experience working for an airline or writing a policy or procedure manual for an airline.  Without establishing a defined link between his experience, methods, and ultimate opinion, Barbe could not persuasively rely on his experience in formulating this opinion, and thus the opinion must be excluded. *Frazier,* 387 F.3d at 1261; *Rider,* 295 F.3d at 1197.

ii.      *Opinion No. 2 - Air France's documented procedures for maintenance of passenger stairs are inadequate*

Barbe's proffered opinion concerning the alleged deficiencies in Air France's procedures for maintaining passenger stairs suffers from the same infirmities as his first opinion above.  Without reviewing Air France's policies, procedures, or training manuals, Barbe cannot reasonably opine that they are somehow lacking.  For the same reasons discussed above, Barbe's opinion on this issue must be excluded because it is not supported by sufficient facts or data. *McCorvey*, 298 F.3d at 1256; *Rider,* 295 F.3d at 1197.

iii.     *Opinion No. 3 - Delgado was most likely pushed or shoved by other hurried passengers disembarking from the flight*

Barbe opined in his report and during his deposition that Delgado fell when he was pushed or shoved in a rush of passengers disembarking from the aircraft. Ex. 4 at 2; Ex. 6 at 112).  This opinion, which merely parrots a self-serving allegation in the Complaint [D.E. 1, §22], is not premised on "sufficient facts or data" or the product of "reliable principles and methods."  In short, it's nothing more than rank speculation.  When questioned about the scientific basis for his theory, Barbe said it was his own "personal experience" as an ***airline passenger*** and his review of the "material" in his deposition binder, including deposition testimony "probably from the family and the aircraft people." Ex. 6 at 96, 108, 112-14, 117.  It

11

is apodictic that Barbe cannot rely on his personal experience *as a passenger*—as opposed to *as an expert*—to validate his expert theory.  And even if he could arguably rely on this experience, he once again failed to make the necessary showing of the causal link between his experience, methods, and the opinion reached. *See Frazier,* 387 F.3d at 1261; *Rider,* 295 F.3d at 1197.

In addition, while Barbe claimed to have formed this opinion based on his review of reports and deposition testimony of Delgado's family members and airline employees, not a single witness saw what caused Delgado to fall.  Sonia Delgado Depo., Ex. 8, at 77; Joseph Cabrera Depo., Ex. 9, at 36; Jackie Cabrera Depo., Ex. 10, at 46.  And not a single witness, including his family members, saw a passenger bump or push Delgado.  Ex. 8 at 77; Ex. 10 at 3.  To the contrary, the eyewitness, Sarah Jamy, reported that no one was near Delgado when he fell.  Ex. 2.  When asked if there was any testimony that Delgado was pushed or bumped when he fell, Barbe testified that the flight attendants testified that "the crowd came out pushing or shoving." Ex. 6 at 107-8, 115.  There was no such testimony.  The deposed Air France crewmembers standing near the exit door testified that the disembarking process was normal.  Dussault Depo, Ex. 11, at 17-18; Arnaud Depo., Ex. 12, at 24-25.  Further, Delta has offered expert testimony demonstrating that the 1.07 meter-wide doorway on the 747 aircraft would necessary limit and control the flow of passengers on the staircase during disembarkment.  Wahrmund Depo., Ex. 13, at 86.  Plaintiff Jacqueline Cabrera admitted that passengers were proceeding through the exit door of the aircraft one by one.  Ex. 10 at 61-62.

Because Barbe has no reliable basis for his opinion that a fellow passenger pushed or shoved Delgado and caused him to fall down the stairs, his testimony is the type of "speculation, conjecture, or inference" that the Eleventh Circuit has cautioned district courts not to admit.  *Rider,* 295 F.3d at 1202; *see also Southern Grouts & Mortars, Inc. v. 3M Company,* 2008 WL

4346798, at *17 (S.D. Fla. Sept. 17, 2008) (excluding expert's report and summary of that report on grounds that they were "so pervaded by conclusory statements as to be almost without value"), *aff'd,* 575 F.2d 1235 (11th Cir. 2009); *Cook,* 402 F.3d at 1111 (court may exclude opinion evidence "which is connected to existing data only by the *ipse dixit* of the expert); *Eastern Auto Distribs., Inc. v. Peugeot Motors of Am.,* 795 F.2d 329, 337 (4th Cir. 1986) (expert's opinion should be excluded when based on assumptions that are speculative and not supported by record).

   iv. *Opinion No. 4 - Delgado was forced to descend the steps at an unsafe rate of speed by the rushing passengers on the stairway*

  Barbe theorized, in the alternative, that even if Delgado was not pushed or shoved, he must have fallen when he was forced to descend the stairs at an unsafe rate of speed by the rushing passengers on the stairway.  Ex. 4 at 3; Ex. 6 at 108-09.  However, Barbe impliedly conceded during his deposition that he could not substantiate this opinion:  he could not point to a single piece of evidence that passengers proceeding down the stairway at the time of Delgado's fall were walking at anything other than a normal or slow rate of speed. Ex. 6 at 109.  He claimed that he formed this opinion based on "custom and practice" of getting off of a delayed flight and from what he recalled that the Air France crewmembers said about a "rush to get off the plane." Ex. 6 at 109.  But, as cited above, the deposed Air France crewmembers standing near the exit door testified that the disembarking process was normal.  And eyewitness Sarah Jamy testified that everybody was walking slowly down the stairway.  Ex. 2.  Tellingly, in direct contradiction of Barbe's testimony, Delgado's wife testified that she and Delgado were walking at a ***normal*** rate of speed down the stairway. Ex. 8 at 109.  Her grandson, who was also on the staircase at the time of the fall, confirmed that Mr. and Mrs. Delgado were both walking down the stairs at a normal rate of speed.  Ex. 9 at 48.  In addition, Barbe acknowledged that he had not

performed any studies on the flow of passengers down a mobile staircase and he had not researched any other expert's studies on this issue. Ex. 6 at 112.

Thus, Barbe's proposed testimony on this issue contains too many "speculative jumps" in the chain of events to render this opinion reliable. *Tamraz v. Lincoln Elec. Co.,* 620 F.3d 665, 670 (6th Cir. 2010). Questioning by Delta's counsel brought to the surface Barbe's contrived line of reasoning:

> Well, you know, that he -- he received a severe injury and died as a result of an occipital blow to his head. And as a consequence, you then take a step backwards. You go: What caused the injury to his head? A fall. And why did he fall? What was -- was there an unsafe condition? Yes. It caused the fall. You just work it back that -- that way.

Ex. 6 at 68. But even Barbe had to concede that his theories were nothing more than hypotheses. When asked whether he considered "all possible causes" of Delgado's fall, Barbe stated "[i]t's a hard question because there might be facts that I don't know. And I stuck to the known facts. He could have been hit by lightning and knocked down, you know. I mean, I -- I stuck with the practical facts." Ex. 6 at 69.

Thus, Barbe's unsubstantiated conjecture that Delgado, 81-years old at the time of the incident, was forced to descend the stairway at an unsafe rate of speed by the rushing passengers on the stairway, and that caused Delgado's fall, should be excluded at trial as unreliable and unsupported by the facts. *See Daubert,* 509 U.S. at 590; *McCorvey*, 298 F.3d at 1256.

v.  *Opinion No. 5 - The missing black anti-skid tape on a section of a step caused Delgado's fall because it made the step more slippery*

Barbe intends to opine that the absence of the one-centimeter-wide anti-skid tape on a recessed section of a step near the location of the fall caused Delgado to slip because it made the step more slippery. Ex. 4 at 2; Ex. 5 at 1. During his deposition, however, he readily acknowledged that the steps on the mobile staircase had integrated metal ridges that made the

steps slip resistant, and that the black anti-skid tape on the leading edge of the step was recessed between two of the metal ridges and took up a very small percentage of the total surface area of the step.  Ex. 6 at 131-33; Grieser Photographs of exemplar step, Ex. 14.  Barbe's "slippery step opinion" is based on pure conjecture.  This theory is not based on insufficient data—it is based on *no data at all*.  Indeed, the exact location of Delgado's fall is indisputably unknown, and, in any event, there is simply no proof of any defect with the steps.

This proffered opinion is also completely inconsistent with all of the credible evidence in this case suggesting that the condition of the steps was not an issue, including the Gendarmerie report and the friction testing done by Delta's expert.  The Gendarmerie report notes the absence of a 58cm portion of the anti-skid tape on step eleven of the mobile staircase.  Ex. 1 at 5.  But the Gendarmerie also concluded that "[t]he absence of the anti-skid tape does not alter the step's condition in dry weather conditions (which was the case)."  *Id.*  Further, the Gendarmerie concluded that no "moist, oily, or bulky substance that may have caused slipping or a loss of balance" was found.  *Id.*

Barbe's assumption that Delgado fell on the eleventh step, where the portion of the missing ant-skid strip was found, is not based on any evidence whatsoever.  Not one eyewitness could identify the exact location of where Delgado fell.  The police speculated that he fell ***near*** the eleventh step from the bottom because the Air France gate agent standing several yards away from the bottom of the staircase, "without being specific," "indicted that this step was close to the place where Delgado had fallen."  Ex. 1 at 5. Barbe further speculates that Delgado hit the back of his head on a step near where he fell.  Ex. 6 at 142.  If that was true, there would presumably be blood, hair or tissue at the initial point of impact, and continuing down the staircase, because Delgado sustained a skull fracture that resulted in copious bleeding. But the Gendarmerie's

investigation revealed that "[n]o biological element" was discovered on the steps and that the "presumed point of impact" is the tarmac.  Ex. 1 at 6.  Other than the speculation in the Gendarmerie report, Barbe has no basis for his assumption that Delgado fell on a step with a missing piece of anti-skid strip.

There is also no basis for his opinion that the missing anti slip strip caused him to fall, because Barbe conducted no testing.  The slip resistance of steps is measured by utilizing a slip tester (tribometer).  At his deposition, Barbe admitted that he did not conduct *any* such testing on the exemplar step to attempt to assess the friction or slip resistance of the step with and without the anti-skid tape.  Ex. 6 at 129-30.  He further acknowledged that, without such testing, he could not compare the friction or slip resistance of the metal ridges on the steps versus the black anti-skid tape.  Ex. 6 at 148.  He merely assumed that the step was slippery based on the fact that Delgado fell.  He had no factual basis for this assumption.  Without having conducted any testing on the step, Barbe's "slippery step" opinion was entirely speculative and should be excluded.  *See Eberli v. Cirrus Design Corp.*, 615 F.Supp.2d 1357, 1367 (S.D. Fla. 2009)(where expert conducted no testing or comparison of engines and did not utilize any methodology his opinion that the breather line should have been located in the rear of the engine must be excluded); *McCool v. Bridgestone/Firestone N. Am. Tire, LLC,* 2006 WL 6869374, at **3-4 (S.D. Fla. Feb. 3, 2006) (excluding opinion testimony of plaintiff's expert where theory of tire defect was untested and without peer review or acceptance).

Unlike Barbe, Delta's expert, Brian Grieser, conducted a slip-resistance analysis of the exemplar step and came to the same conclusion as the Gendarmerie—that the absence of the anti-skid strip does not alter the step's condition.  Grieser observed that the metal step contains a prominent series of ridges that run across its width, and the tape itself was thin and located in a

recessed groove between two series of taller ridges.  Expert Report of Brian C. Grieser, Ex. 15.

According to the testing conducted, the metal ridges, not the tape, "made the step slip resistant

under all the conditions tested: with and without tape, and both dry and wet," and "[t]he presence

of the tape had no substantial effect on the step's slip resistance."  *Id.* at 7, 8.  Even Barbe himself

acknowledged that the step was of anti-skid quality under the ISO guidelines. Ex. 6 at 128, 179.

Without performing any type of testing or analysis on the exemplar step, Barbe cannot rebut its

anti-skid quality.

Given that Barbe's "slippery step" opinion is purely speculative and unsubstantiated, it

should be excluded at trial. *See Daubert,* 509 U.S. at 590; *McCorvey*, 298 F.3d at 1256.

      vi.    *Opinion No. 6 - The missing black anti-skid tape on a section of step eleven caused Delgado's fall because he lost a visual cue*

Finally, Barbe's theory that the absence of the anti-skid tape on a portion of step eleven

interrupted Delgado's cadence, thereby "probably" causing his fall, since he lost a visual cue has

no evidentiary foundation.  Ex. 5 at 1; Ex. 6 at 174-76.[3]  According to Barbe, without the entirety

of the one-centimeter black tape at the leading edge of the step, an individual would not know

where the edge of the step was and, thus, would not know whether it was safe to proceed.  *Id.*

This novel theory has absolutely no scientific support.  A necessary predicate to the admission of

scientific evidence is that the principle upon which it is based "be sufficiently established to have

gained general acceptance in the particular field to which it belongs."  *United States v. Kilgus,*

571 F.2d 508, 510 (9th Cir. 1978).  Although Barbe urged that missing anti-skid tape violated a

principle of "uniformity" by interrupting a person's cadence or rhythm, he has no basis for this

premise.  Indeed, when asked which published standards specified that a missing anti-skid tape

violates the principle of uniformity, Barbe disjointedly stated "the Uniform Building Codes, all

---

[3] The "lack of visual cue" theory was not contained in Barbe's Initial Report. It surfaced only in
his rebuttal report, Ex. 5, after he had read Grieser's report.

of the codes that call for -- engineering codes that that call for strips to be on there to be uniform." Ex. 6 at 175. Such amorphous standards cannot possibly form a reliable basis for Barbe's theory.

Moreover, the underlying factual predicates for Barbe's theory—that Delgado was looking down at the steps as he descended the stairway, and that he fell at the eleventh step—are entirely speculative. Barbe admits that if Delgado was not looking down, then the lack of a visual cue would make no difference. Ex. 6 at 175. No witness testified that Delgado was walking down the stairway peering downward. And it simply defies logic that, after proceeding down at least fourteen of the twenty-five steps in the stairway, Delgado would be looking down at each step for the black anti-skid tape to ensure his safe descent. As Barbe readily acknowledged, it usually takes only one or two steps to develop a rhythm or cadence in the manner of descent. Plus, there were several other visual cues that Barbe ignored—the descending handrails along either side of the steps, the shadows, and the remaining 85 cm. of anti-skid strip on the eleventh step. Grieser Depo., Ex. 16, at 54. Thus, Barbe's opinion drawn from that deficient predicate is similarly speculative, and therefore impermissible. *See Eastern,* 795 F.2d at 337 (expert's opinion should be excluded when based on assumptions that are speculative and not supported by record).

### C.     Barbe's Proposed Expert Opinions Would Offer No Assistance to the Trier of Fact

Finally, in addition to the lack of qualifications to render his proffered expert opinions and the inherent unreliability of his opinions, Barbe's proposed opinion testimony must be excluded because it would be of no value to the trier of fact. *See Frazier*, 387 F.3d at 1262-63 ("The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact. By this requirement, expert testimony is admissible if it concerns matters that are

beyond the understanding of the average lay person."); *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) ("Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own."); *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994) ("A district court may commit manifest error by admitting expert testimony where . . . the subject matter of the expert's testimony is not beyond the ken of the average juror."); *United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994) (quoting Fed. R. Evid. 702 advisory committee's note) ("'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'").

Here, Barbe testified that his opinions regarding the purported inadequacy of Air France's documented disembarkation procedures and maintenance procedures for the stairways were premised upon his experience.  However, he did not identify any specialized or technological expertise he utilized to bear upon this issue that is outside the understanding of an average juror. A juror who has flown on airliners or walked down stairs would have the same experience as Barbe, thus rendering Barbe's opinions unnecessary and unhelpful to the jurors.

Similarly, Barbe testified that he formed his opinions that Delgado was likely pushed, shoved, or felt rushed by other hurried passengers disembarking from the late-arriving flight, based on his review of reports and deposition testimony of Delgado's family members and airline employees.  Again, he did not utilize any specialized or technical knowledge beyond the understanding of an average juror in formulating these opinions.  Instead, he was merely parroting the testimony of a few of Delgado's family members that the disembarkation process

was chaotic, all in an attempt to bolster this testimony because it is being substantiated by an "expert."  Such tactics are not permitted.  *See United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992) (subject matter of permissible expert testimony "must have esoteric aspects reasonably perceived as beyond the ken of the jury and that expert testimony cannot be used solely to bolster the credibility of [the proponent's] fact-witnesses by mirroring their version of events"); *Amuso*, 21 F.3d at 1263.  The individuals who were disembarking from the aircraft behind Delgado, including Plaintiffs, can adequately testify as to whether the disembarkation process was chaotic and whether Delgado was forced to race down the stairway.  Barbe's proffered expert opinion testimony on these issues—which simply restates lay witness testimony and employs no expertise—are inadmissible as they would not assist the trier of fact in any manner. *See Gust v. Jones,* 162 F.3d 587, 595 (10th Cir. 1998) (affirming exclusion of accident reconstructionist expert where jury was able to determine speed based on lay witness testimony regarding speed based on witness' own perception).

Likewise, Barbe's opinions regarding the missing anti-skid tape had no scientific support and were purely conjectural.  Thus, these opinions, too, were not premised on any scientific, technical, or specialized knowledge or expertise and would offer no assistance to the trier of fact because they do not concern matters beyond the understanding of the average lay person. For this reason, too, they should be excluded. *Frazier*, 387 F.3d at 1262-63.

## CONCLUSION

WHEREFORE, for all of these reasons, Defendant Delta respectfully requests that this Court enter an order excluding Lewis Barbe's proposed expert witness testimony.

Dated:  July 15, 2013

HOLLAND & KNIGHT LLP
*Attorneys for Defendant Delta Air Lines, Inc.*
701 Brickell Avenue, Suite 3000
Miami, Florida  33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799


By:      s/Lyndall M. Lambert
         Lyndall M. Lambert
         Florida Bar No. 308013
         lyndall.lambert@hklaw.com

         Christopher G. Kelly
         NY Bar # 2097624
         christopher.kelly@hklaw.com
         Sarah G. Passeri
         NY Bar # 4740015
         sarah.passeri@hklaw.com
         HOLLAND & KNIGHT LLP
         31 West 52nd Street
         New York, New York 10019
         (212) 513-3264


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of July, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.



s/ Lyndall M. Lambert
Lyndall M. Lambert

## SERVICE LIST

| | |
|---|---|
| Steven C. Marks, Esq.<br>smarks@podhurst.com<br>PODHURST ORSERCK, P.A.<br>25 West Flagler Street, Suite 800<br>Miami, FL 33130<br>Telephone: (305) 3589-2800<br>Facsimile: (305) 358-2382<br>***Attorney for PLAINTIFFS***<br>Service via transmission of Notices of<br>Electronic Filing generated by CM/ECF | |