UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-CV-23272-Graham/Goodman

SONIA DELGADO, JUAN ENRIQUE
DELGADO & JACQUELINE CABRERA, as
co-Personal Representatives of the Estate of
Juan Delgado, Deceased

    Plaintiffs,

v.

DELTA AIR LINES, INC.

    Defendant.
_____/

## DELTA'S MEMORANDUM OF LAW IN OPPOSITION
## TO  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Delta Air Lines, Inc. ("Delta") submits this memorandum in opposition to Plaintiffs' Motion for Partial Summary Judgment ("Motion") filed on July 15, 2013 and states as follows.

### INTRODUCTION

Plaintiffs are not entitled to partial summary judgment on the issue of whether their decedent, Juan Delgado, died as a result of an "accident" as that term of art is interpreted under Article 17 of the Montreal Convention.  As a matter of fact, and law, it is Delta that is entitled to summary judgment, as Plaintiffs have no admissible evidence by which they can carry their burden of showing that an "accident" under Article 17 occurred.  There is no admissible evidence that Mr. Delgado's injuries were caused by an unexpected or unusual event or happening that was external to him. The declaration of Plaintiff Sonia Delgado in which she claims Mr. Delgado fell as a result of an external unexpected event is a sham which flatly contradicts her deposition

testimony, as well as contemporaneous statements to French investigators, and cannot be used to support Plaintiffs' Motion.

Plaintiffs' claim arises from the death of Juan Delgado, an 80 year-old man, who fell down an ABS-580 mobile staircase while disembarking from Air France Flight 695 in Paris on May 31, 2012 after a nine-hour over-night flight from Miami.  There is no dispute that Juan Delgado ("Mr. Delgado" or "decedent") was pulling thirty pounds of luggage, including his twenty-two pound, two-wheeled roller suitcase, with an eight pound bag stacked on top of it, down the stairs *behind* him while deplaning in Paris.  At an unspecified location near the bottom of the stairs, Mr. Delgado fell onto the tarmac, hit his head, and allegedly sustained a serious head injury as a result.  He was transported to the local hospital, where days later his family and doctors discontinued life support.

Immediately following Mr. Delgado's fall, the Gendarmerie (the French police) conducted a comprehensive investigation and, as part, interviewed witnesses present at the scene, including two of the Plaintiffs and Air France cabin crew and ground personnel.  The Gendarmerie took photographs, collected evidence, and seized and inspected the mobile staircase.  *See* Lambert Decl., ¶¶ 3-4 [D.E. 48].  The Gendarmerie found that: (1) no one was around Mr. Delgado at the time of his fall, and (2) the portable staircase was not the cause of the fall. Importantly, statements from Plaintiffs and other family members traveling with Mr. Delgado, as well as their subsequent deposition testimony, indicate not one of them actually witnessed the fall, but only the aftermath.  The *only* eyewitness to the fall, Sarah Jamy, attests that Mr. Delgado simply fell, with no one near him.  Tellingly, Plaintiffs omit reference to these portions of the Gendarmerie report, as such references would be fatal to their claims.

Instead, Plaintiffs now attempt to rewrite the very history that ends their claim by submitting an incomplete declaration from Plaintiff Sonia Delgado that is demonstrably inconsistent with her prior deposition testimony and her statement to the Gendarmerie, both of which were given under oath. Despite attesting not once, but twice, that she never saw what caused the fall, in an effort to save her claim, Mrs. Delgado submits a declaration inferring the contrary at the summary judgment phase. The truth is: not a single member of the Delgado family saw what caused the fall.

Plaintiffs suggest multiple and conflicting possible Article 17 "accidents" in Paris. One of Plaintiffs' experts claims that Mr. Delgado tripped, while the other claims Mr. Delgado slipped and/or was jostled. These opinions are based on Plaintiffs' self-serving statements of a "chaotic" disembarking process, a twenty-minute delay, and untested conjurings that a missing portion of anti-skid tape *around* the location of the fall caused Mr. Delgado to fall. No admissible evidence supports that an external factor caused the fall. Notably absent in Plaintiffs' Motion is any mention that Mr. Delgado was 80 years old, had serious health concerns (including a history of stroke and heart conditions, *see* excerpts of Mr. Delgado's medical records attached hereto as Exhibit 1),[1] and decided to drag 30 pounds of luggage down the stairs behind him, without assistance, while deplaning after a nine-hour overnight transatlantic flight.

---

[1] Plaintiffs produced medical records on July 1, 2013 showing that Mr. Delgado had advanced atrophy of the frontal lobes of his brain, had a history of high blood pressure, insomnia for which he was prescribed Dalmane (flurazepam), low back surgery, stroke (CVA), a heart condition called left bundle branch block, chest pain, and had fallen and hit his head in 2011. *See* Ex. 1. Plaintiffs have not excluded any of these conditions as causes of his fall on May 31, 2012.

## ARGUMENT

I. **PLAINTIFF SONIA DELGADO'S DECLARATION CONTRADICTS HER DEPOSITION TESTIMONY AND CANNOT BE USED TO SUPPORT SUMMARY JUDGMENT**

In an effort to support Plaintiffs' erroneous contentions that Mr. Delgado was pushed or jostled by a fellow passenger on the stairs and fell at the eleventh step from the bottom, Plaintiffs submit a declaration from Sonia Delgado that directly contradicts her deposition testimony and the sworn statement that she provided to the Gendarmerie. Mrs. Delgado did not correct any of these statements made under oath, despite being provided time to do so, and despite being cross-examined by her counsel during her deposition. But now, at the summary judgment phase, she submits a declaration that in effect recants her prior unequivocal testimony that, *inter alia*, she never saw the cause of the fall.[2]

It is well settled that "when a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given testimony." *Delaware Valley Floral Group, Inc., et al. v. Show Rose Nets, LLC*, 597 F.3d 1374, 1381 (Fed. Cir. 2010); *see also McCormick v. City of Fort Lauderdale*, 333 F.3d 1234 (11th Cir. 2003). Indeed, the Eleventh Circuit bars such "sham affidavits" as a means to support or overcome a motion for summary judgment. *See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657-658 (11th Cir. 1984).

With respect to the circumstances of Mr. Delgado's fall, Mrs. Delgado now says that "I was standing approximately two stairs behind my husband when I witnessed that he had fallen.

---

[2] Moreover, this declaration, filed on the electronic docket, does not even appear to be the actual version executed by Mrs. Delgado, as it contains duplicative sentences from paragraph 13 on the signature page and omits a paragraph number, 14. *See* D.E. 43-1 at 3-4 (Delgado Decl.). Such tactics are improper and cannot be used to support Plaintiffs' motion.

4

My husband fell backwards, with his feet extending out in front of him and his head falling back toward the stair case." Delgado Decl., ¶ 12 [D.E. 43-1 at 3].  First, by use of the passive voice, it is unclear if Plaintiff is now claiming to have witnessed the fall or whether she just observed that a fall occurred.  If the former, this statement clearly contradicts her deposition testimony that there were two big people between her and Mr. Delgado as they descended the staircase (S. Delgado depo, attached as Exhibit 2 hereto, at 67, 70, 77)  and that she "didn't see what happened." *Id.* at 77.  In fact, she testified that she couldn't even tell how Mr. Delgado was carrying his bags because of the two people in-between them.  *Id.* at 67-8, 75, 77.  She could only see his light blue shirt. *Id*. at 67-8.

Her declaration further asserts that "upon arrival, the passengers of the flight began descending the stairs in a very rushed manner." Delgado Decl.,¶ 9 [D.E. 43-1 at 3].  However, this statement is inconsistent with her testimony that her husband was walking at a normal speed (Ex. 1, S. Delgado depo at 109) and was not in a rush, and that she was walking down the steps one-by-one, putting the bag on each step.  *Id.* at 79.  Likewise, Mrs. Delgado now claims that she "was personally bumped by at least one other passenger," and "passed by other passengers while [she] was on the stairs." Delgado Decl.,¶ 10 [D.E. 43-1 at 3].  She further states that there were passengers on the stairs in front and behind Mr. Delgado, concluding that it was "virtually impossible that he was not pushed."  *Id.*, ¶ 11.  To the contrary, her deposition testimony clearly indicates that nobody pushed or touched her or her husband (Ex. 1, S. Delgado depo at, 73-4, 77-8) and that she didn't see any other passengers in front of Mr. Delgado.  *Id.* at 77, 110-111. She also testified that she was not sure if the stairs are even wide enough to walk down side-by-side. *Id.* at 69-70.  Importantly, she clearly testified in both her deposition and the statement she gave

5

to the Gendarmerie that she does not know what caused her husband to fall. *Id.* at 77; Gend. Statement of Sonia Delgado, attached as Exhibit 3 hereto.

Despite testimony that Mrs. Delgado did not see what caused the fall and did not know the exact location, other than that she was "down a few steps" (Ex. 1, S. Delgado dep. at 78) from the top and he was "perhaps midpoint" (*id*. at 113), she now claims for the first time, in support of her own motion for summary judgment: "I was just past the intermediate platform at the time my husband fell, and I believe that the witness statement that he was on the eleventh step from the bottom of the stairs accurately reflected his position on the stairs when his fall initiated. He then rolled down the stairs to the tarmac." Delgado Decl.,¶ 13 [D.E. 43-1]. The Gendarmerie Report states that the staircase had 25 steps, with an intermediate platform. *See* Gend. Piece 2 at 3 [D.E. 48-17]. If Mrs. Delgado was a few steps from the top, and Mr. Delgado was near the midpoint, with two big people between them (as she stated in her deposition), then there must have far more than two steps between them (contrary to what she stated in her Declaration). From her deposition it is clear that Mrs. Delgado's view was obstructed and she was too far behind her husband to determine the precise location where he fell or what caused him to fall.

Due to these unexplained, inherent inconsistencies between Mrs. Delgado's declaration and her prior testimony, Plaintiffs cannot use the declaration to support summary judgment. *See Van T. Junkins & Assocs.,* 736 F.2d at 657-658. Additionally, the portions of the declaration that he fell at the eleventh step and that it was "virtually impossible that he was not pushed" (Delgado Decl.,¶¶ 11, 13 [D.E. 43-1]) are rank speculation and, on that basis alone, cannot support summary judgment. *See Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986) (In ruling on a motion for summary judgment, "All reasonable inferences

arising from the evidence must be resolved in favor of the non-movant, but inferences based upon speculation are not reasonable").

## II. PLAINTIFFS CANNOT CARRY THEIR TREATY BURDEN OF SHOWING THAT MR. DELGADO'S FALL WAS CAUSED BY AN ARTICLE 17 ACCIDENT

The Montreal Convention only extends liability to the air carrier if a passenger can prove an Article 17 "accident," *i.e.*, "an unexpected or unusual event or happening that is external to the passenger" caused passenger's injuries. *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1364 (S.D. Fla. 2008). Proof of an uninterrupted connection between the event and the injury is required. *See Cush v. BWIA Int'l Airways, Ltd.*, 175 F. Supp. 2d 483, 487 (E.D.N.Y. 2001). Further, the accident analysis involves "an inquiry into the nature of the event which caused the injury rather than the care taken by the airline to avert to injury." *Ugaz*, 576 F. Supp. 2d at 1364 (*citing Air France v. Saks*, 470 U.S. 392, 407 (1985)). An "accident" does not occur if the injury at issue resulted from a "passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." *Saks*, 470 U.S. at 406; *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 172 (1999)

It is Plaintiffs' burden, and Plaintiffs' burden alone, to prove an Article 17 accident. In an unsuccessful effort to state a claim, Plaintiffs present a number of conflicting theories as possible "accidents": (a) the use of portable stairs, (b) jostling by other passengers, and (c) defective stairs. Such theories are unfounded and not supported by the evidence. Additionally, at every instance, Plaintiffs fail to prove the critical casual link, *i.e.*, that Mr. Delgado's injury was caused by an "accident." Plaintiffs have failed to meet their burden, and as noted in Delta's Motion for

Summary Judgment, that failure to carry that burden entitles Delta, not Plaintiffs, to summary judgment.[3]

### A.    The Use of a Portable Staircase Is Not an Accident Under Article 17

Plaintiffs' conclusory view that an Article 17 "accident" arose from the carrier's use of a portable staircase to deplane a transatlantic flight that arrived twenty-minutes behind schedule is baseless.  First, it is well settled that a delay is not an usual or unexpected event.  *See In re Deep Vein Thrombosis Litig.*, No. 04 MDL 1606, 2007 WL 3027351, at *14-16 (N.D. Cal. Oct. 12, 2007) (recognizing that delays in air travel are a reality and cannot reasonably be said to be unexpected or unusual); *see also Campbell v. Air Jamaica Ltd.*, No. 11 Civ. 23233, 2012 WL 3562126, at *3 (S.D. Fla. Aug. 17, 2012) (same).  Likewise, the use of mobile stairs to disembark passengers is not unexpected or unusual, even coupled with a slight delay.  As the testimony indicates, using mobile staircases are routinely used at airports, especially at Charles de Gaulle.  *See* Gontier Dep. at 66-67 [D.E. 48-11].  Air France alone employs 42 mobile staircases at Charles de Gaulle Airport.  Papin Dep. at 67 [D.E. 48-16].  Other carriers use portable staircases, as well.  Gontier Dep. at 66-67 [D.E. 48-11].  There is simply no proof that an airline at a major international airport should, or even has the ability to, alter the specific disembarking place or equipment for any flight, whether it is on schedule or twenty minutes delayed.

Significantly, the causal connection between decedent's fall and the use of mobile stairs or the twenty-minute delay is simply too tenuous.  *See Ugaz*, 576 F. Supp. at 1366 (finding a

---

[3] Plaintiffs cannot transfer their burden to Defendants by claiming that Defendant's expert could not rule out the cause of the fall was not external to Mr. Delgado as support for an accident. Defendant's expert was merely listing other possible contributing factors that could have caused Mr. Delgado to loose his balance - none of which would be unexpected or unusual under Article 17 or could be proven by Plaintiffs.

stopped or inoperable escalator not enough to constitute an accident); *see generally Saks*, 470 U.S. at 398 ("the text of Article 17 refers to an accident which caused the passenger's injury, and not an accident which is the passenger's injury"). Plaintiffs fail to show how the use of portable stairs, in and of itself, caused Mr. Delgado's fall. Tellingly, the other 364 passengers onboard deplaned without incident. And, as the testimony of Mr. Papin indicates, such a fall has not occurred at Charles de Gaulle Airport for at least the past 11 years that he has been employed there. Papin Dep. at 15 [D.E. 48-16]. This is particularly striking considering Charles de Gaulle Airport handled 61.6 million passengers in 2012 alone.[4]

Plaintiffs ignore these facts and instead rely a single unpublished district court case out of the Southern District of Indiana for the proposition that the use of portable stairs constitute an accident: *Cuartas v. Am. Airlines, Inc.*, No. 10-cv-00390, 2012 WL 845543 (S.D. Ind. March 12, 2012). Plaintiffs mischaracterize *Cuartas* in their moving papers, as the *Cuartas* court actually declined plaintiffs' invitation to deem the use of stairs an "accident" under the Convention. In any event, the plaintiff's argument in *Cuartas* was not that the use of the portable staircase was an accident, it was that the use of uncovered stairs that were wet and lacked any traction strips during a "big storm" was an accident. *Id.* at *1, *3. Despite the undisputed fact that the stairs were wet and slippery, the court still declined to grant plaintiffs' motion for summary judgment on the issue of whether there was an Article 17 "accident."

On the other hand, here, it is uncontroverted that the stairs presented no slipping hazards, as no "moist, oily, or bulky substance that may have caused slipping or a loss of balance" was found. Ja. Cabrera Dep. at 73 [D.E. 48-4]; S. Delgado Dep. at 102 [D.E. 48-3]; Gend. Piece 2

---

[4] *See* https://www.aeroportsdeparis.fr/ADP/en-GB/Group/Presentation/Aeroportsdeparisataglance/our-platforms/Paris-Charles-de-Gaulle/paris_cdg.htm.

[D.E. 48-17].  And, "[t]he absence of the anti-skid tape does not alter the step's condition in dry weather conditions (which was the case)." *Id*.  Dozens of passengers had disembarked without incident immediately prior to Mr. Delgado commencing his descent, and out of the 61.6 million passengers traveling to Charles de Gaulle Airport in 2012, Mr. Delgado was the only one to have sustained such a fall.

In an effort to conceal the fact that plaintiffs cannot point to a single causal factor for Mr. Delgado's fall, they urge the Court effectively to find an "accident" occurred on a *res ipsa loquitor* basis.  They point to two cases to support their presumption that "falling down the stairs constitute an 'accident'" under the Montreal Convention: *McCarthy v. Am. Airlines, Inc.*, No. 07-CV-61016, 2008 WL 2704515 (S.D. Fla. June 27, 2008) and *Gezzi v. British Airways PLC*, 991 F.2d 603 (9th Cir. 1993).  Neither of these cases, however, stands for that proposition.  In *McCarthy*, the court specifically found that the flight attendants' touching of plaintiff's arm caused him to fall down the stairs.  There are simply no allegations of improper touching by crewmembers here.  And in *Gezzi*, it was undisputed that the water on the stairs caused the passenger to slip and fall.  Again, all evidence here demonstrates that there was no water, debris, or other hazards on the stairs in this case.

Quite simply, plaintiffs did not and can not provide a causal link between the use of portable stairs and Mr. Delgado's fall.  *See Goodwin v. British Airways PLC*, 2011 WL 3475420 (D. Mass. Aug. 8, 2011) (finding no "accident" despite allegations that plaintiff was pushed by another passenger while disembarking).  Nor can they refute the testimony that the use of portable stairs is routine and has not resulted in such a fall at Charles de Gaulle Airport, which serves more than 60 million passengers a year.

### B. Plaintiffs' Contention that Mr. Delgado Was Jostled by Other Passengers Has No Support and Is Nothing More Than Pure Speculation

Plaintiffs' contention that Mr. Delgado was jostled by another passenger is speculative, at best, and ignores the sworn statement from the *only* eyewitness to the fall, Ms. Jamy. None of the plaintiffs or their traveling party saw what caused decedent's fall. *See* S. Delgado Dep. at 77-78 [D.E. 48-3]; Ja. Cabrera Dep. at 46 [D.E. 48-4]; Jo. Cabrera Dep. at 36 [D.E. 48-5]; M. Cabrera Dep. at 24 [D.E. 48-6]; A. Cabrera Dep. at 22 [D.E. 48-7]). More importantly, not a single witness saw anyone bump or push decedent. S. Delgado Dep. at 77-78 [D.E. 48-3]; Ja. Cabrera Dep. at 68 [D.E. 48-4]; Jo. Cabrera Dep. at 39 [D.E. 48-5]. To the contrary, the only eyewitness to the fall, Sarah Jamy, provided a sworn statement to the Gendarmerie that everybody was walking slowly down the stairway and that no one was in the vicinity of Mr. Delgado on the stairs at the time of his fall. Jamy Statement at 2 [D.E. 48-8]. Plaintiff Sonia Delgado confirmed that she and Mr. Delgado were walking at a *normal* rate of speed down the stairway. S. Delgado Dep. at 109 [D.E. 48-3]; *see also* Jo. Cabrera Dep. at 48 [D.E. 48-5]. One plaintiff even admitted that passengers were proceeding through the exit door of the aircraft one by one. Ja. Cabrera Dep. at 61-62 [D.E. 48-4]. Mr. Delgado did not seek any assistance. *Id.*, at 40; Jo. Cabrera Dep. at 17, 27-28 [D.E. 48-5]. Importantly, Air France crewmembers testified that the disembarkation process was normal, with no pushing or shoving by passengers. Arnaud Dep. at 24-25, 28, 58 [D.E. 48-12]; Diveu Dep. at 14-16 [D.E. 48-13]; Dussault Dep. at 17-18 [D.E. 48-14]. And, the Gendarmerie conducted an investigation into the disembarking, particularly the disembarking procedures, and found no reasons for Mr. Delgado's fall. Gendarmerie Report, Section 1, attached as Exhibit 4 hereto.

Plaintiffs' theory that Mr. Delgado was pushed or jostled is a speculative inference that is contrary to the evidence and cannot be used to support summary judgment in their favor. *See*

11

*Marshall*, 797 F.2d at 1559; *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1328 (11th Cir. 1982) (in a wrongful death action, where the inference of proximate cause of the death is speculative, there is no issue of fact for the jury).[5]  After an extensive investigation by the Gendarmerie, and almost a year of litigation, with opportunities to take depositions here and overseas in France, not a single eyewitness has been identified who saw Mr. Delgado come into physical contact with another passenger.  For the reasons discussed *supra*, Mrs. Delgado's declaration controverts her prior sworn statement and deposition testimony and cannot be used to support a motion for judgment.  *See* Sect. I.  Additionally, as articulated in Delta's Daubert motions to exclude, any suggestion by Plaintiffs' experts that a push from another passenger caused the fall is based on self-serving and an unsubstantiated descriptions of a "chaotic" disembarking process, and should be stricken.

It is Plaintiffs' burden to prove an "accident," and they simply cannot meet this burden with self-serving statements of a "chaotic" disembarking process when not a single one of them actually saw Mr. Delgado's fall, let alone the cause of the fall. *See* S. Delgado Dep. at 77-78 [D.E. 48-3]; Ja. Cabrera Dep. at 46 [D.E. 48-4]; Jo. Cabrera Dep. at 36 [D.E. 48-5]; M. Cabrera Dep. at 24 [D.E. 48-6]; A. Cabrera Dep. at 22 [D.E. 48-7].

### C. Plaintiffs' Contentions that the Stairs Were Defective and that Those Defects Caused Mr. Delgado to Fall are Wholly Unsupported

Although not argued as an "accident" per se, peppered throughout Plaintiffs' brief is the dark hint that the portable staircase, particularly step no. 11, was defective and caused or

---

[5] Absent any proof that Mr. Delgado was pushed, even some jostling by other passengers upon disembarking is normal and not an "accident."  *See Garcia Ramos v. Transmeridian Airlines, Inc.*, 385 F. Supp. 2d 137, 141-43 (D.P.R. 2005) (noting that a "reasonable passenger would expect some jostling or other physical contact when other passengers are attempting to reach their seats"); *Goodwin*, 2011 WL 3475420, at *5 (finding no accident despite testimony that the passengers were in a "big hurry to get out").

contributed to the fall.  The exact location of decedent's fall is indisputably unknown, and, in any event, all credible evidence in this case, including the Gendarmerie report, the exemplar step, and the expert testing and report, suggest that the condition of the steps was not an issue.

The Gendarmerie report notes that "from the place where the witness [Constentin] was standing, it is impossible to determine with exactitude on which step the victim was at the time of his fall."  Gend. Piece 4 at 3 [D.E. 48-18].  A passenger eyewitness attested that decedent fell on "the last steps."  Jamy Statement at 2 [D.E. 48-3].  The exact step on which Mr. Delgado fell cannot be determined.

However, the location of the fall is of no moment as the Gendarmerie concluded that "[t]he absence of the anti-skid tape does not alter the step's condition in dry weather conditions (which was the case)."  Gend. Piece 2 at 5 [D.E. 48-17].   It is uncontroverted that dozens of passengers had disembarked without incident immediately before Mr. Delgado began his descent.  Delta's expert evaluated and tested an exemplar step and concluded that the step was slip resistant even in the absence of the anti-skid strip.  Grieser Report at 7 [D.E. 48-15] ("[t]he presence of the tape had no substantial effect on the step's slip resistance").  Particularly, the metal step had integrated metal ridges that made the step slip resistant, and the black tape on the leading edge of the step was recessed between two of the metal ridges and took up a very small percentage of the total surface area of the step. *Id.* at 5-7. The metal ridges, not the tape, made the step slip resistant. *Id.* at 8. As admitted by Plaintiffs' expert, the step was of anti-skid quality under the ISO 12056 standard applicable to mobile staircases. Barbe Dep. at 128-129 [D.E. 48-19].  Plaintiffs produced no evidence to controvert the findings of the Gendarmerie and Delta's expert. Indeed, they could not have disputed these findings because neither of their experts conducted any testing of the stairs or step.  *See* Delta's Motions to Exclude [D.E. 44 and 45].

13

That Mr. Delgado even fell at step 11 is pure speculation.  In any event, there is no evidence that the missing anti-skid tape caused decedent's fall.

## CONCLUSION

1.      There is no precedent to support that the use of a portable staircase to disembark a transatlantic flight delayed by twenty minutes is an "accident," nor is there any evidence of a direct casual link between the fall and the use of a portable staircase.

2.      There is no evidence that Mr. Delgado was pushed or jostled by another passenger, as neither Plaintiffs nor their traveling companions saw the fall, and the only eyewitness said that no one was around Mr. Delgado at the time of the fall.

3.      There is no evidence as to the exact step on which Mr. Delgado fell.

4.      There is no evidence that the stairway was defective, or that a missing 58 cm portion of a 1 cm wide piece of tape recessed in the tread of one of the steps caused the fall.

5.      Plaintiffs have pointed to no other external factor that caused the fall.

6.      Without evidence that an external factor caused Mr. Delgado to fall, there is no Article 17 "accident." Plaintiffs' motion should be denied, and Delta's motion for summary judgment granted in its entirety on the basis that Plaintiffs failed to carry the burden of proof that is exclusively theirs under the law.

WHEREFORE, Defendant Delta Air Lines respectfully requests that this deny Plaintiffs' Motion for Summary Judgment.

July 26, 2013

        HOLLAND & KNIGHT LLP
        *Attorneys for Defendant Delta Air Lines, Inc.*
        701 Brickell Avenue, Suite 3000
        Miami, Florida  33131
        Telephone: (305) 374-8500
        Facsimile: (305) 789-7799

By:    s/Lyndall M. Lambert
        Lyndall M. Lambert
        Florida Bar No. 308013
        lyndall.lambert@hklaw.com

        Christopher G. Kelly
        NY Bar # 2097624
        christopher.kelly@hklaw.com
        Sarah G. Passeri
        NY Bar # 4740015
        sarah.passeri@hklaw.com
        HOLLAND & KNIGHT LLP
        31 West 52nd Street
        New York, New York 10019
        (212) 513-3264

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this <u>26th</u> day of July, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Lyndall M. Lambert_____
Lyndall M. Lambert

## SERVICE LIST

| |  |
|---|---|
| Steven C. Marks, Esq.<br>smarks@podhurst.com<br>Lea Valdivia, Esq.<br>lvaldivia@podhurst.com<br>PODHURST ORSERCK, P.A.<br>25 West Flagler Street, Suite 800<br>Miami, FL 33130<br>Telephone: (305) 3589-2800<br>Facsimile: (305) 358-2382<br>***Attorney for PLAINTIFFS***<br>Service via transmission of Notices of Electronic Filing generated by CM/ECF | |